**Gary Shuster, CA SBN 162379**
gary@shuster.com
UTHERVERSE DIGITAL, INC. LEGAL DEPT.
102-80A 6th St.
New Westminster, BC V3L 5B3
Canada
Telephone: (604) 417-5002
Facsimile: (559) 272-2222

Attorneys for Plaintiff
UTHERVERSE DIGITAL, INC.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UTHERVERSE DIGITAL, INC.,** | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **UBISOFT, INC.; and UBISOFT ENTERTAINMENT SA,** | |
| Defendants. | |

Plaintiff Utherverse Digital, Inc. ("Utherverse" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendants Ubisoft, Inc. and Ubisoft Entertainment SA (collectively, "Ubisoft" or "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271. Plaintiff Utherverse owns a family of United States patents directed to reducing motion sickness and improving user comfort in virtual-reality ("VR") and other immersive-display environments by rendering a stable, static visual reference—such as a virtual nose—into the user's field of view while the remainder of the displayed scene changes.

2. Defendants make, use, test, demonstrate, offer to sell, sell, distribute, and import into the United States VR software products that implement Plaintiff's patented inventions, and induce others to do so. The accused products include, without limitation, the VR title Assassin's Creed Nexus VR (the "Accused Assassin's Creed Nexus Product") and the VR title Eagle Flight (the "Accused Eagle Flight Product") (together, the "Accused Products").

3.    Plaintiff asserts United States Patent No. 10,528,129 (the "'129 Patent") and United States Patent No. 9,977,495 (the "'495 Patent") (together, the "Asserted Patents").

**THE PARTIES**

4.    Plaintiff Utherverse Digital, Inc. is a corporation organized and existing under the laws of British Columbia, Canada, Number BC0775468, incorporated November 23, 2006, with its principal place of business in Vancouver, British Columbia, Canada.

5.    On information and belief, Defendant Ubisoft, Inc. is a corporation organized and existing under the laws of the State of California, with a principal place of business at 300 Mission Street, 20th Floor, San Francisco, California 94105, within this District. Ubisoft, Inc. identifies itself in its own Store Terms of Sale as "a California corporation having its registered address at 300 Mission Street, 20th Floor, San Francisco, CA 94105."

6.    On information and belief, Defendant Ubisoft Entertainment SA is a société anonyme organized and existing under the laws of France, with its principal place of business in Saint-Mandé, France. Ubisoft Entertainment SA is the ultimate parent of, and publisher for, the Ubisoft group of companies, including with respect to the Accused Products. Ubisoft Entertainment SA may be served pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

7.    On information and belief, Defendants act in concert and as part of a common enterprise with respect to the Accused Products. Ubisoft Entertainment SA directed, authorized, controlled, financed, and/or benefited from the development, publication, marketing, distribution, and commercialization of the Accused Products, including through Ubisoft, Inc. and other Ubisoft entities in the United States.

**JURISDICTION**

8.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because it arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

9.    This Court has personal jurisdiction over Ubisoft, Inc. because it is a California corporation that resides in, is incorporated in, and maintains its principal place of business in California and in this District; because it has continuous and systematic contacts with California and

COMPLAINT FOR PATENT INFRINGEMENT
2

this District; and because it has committed and continues to commit acts of patent infringement in this District.

10. This Court has personal jurisdiction over Ubisoft Entertainment SA because, directly and through its subsidiaries, agents, and instrumentalities, it has purposefully directed infringing activities at the United States and this District, has placed the Accused Products into the stream of commerce with the knowledge and expectation that they would be used, sold, and distributed throughout the United States and in this District, and has derived substantial revenue from such activities; and because the exercise of jurisdiction is consistent with due process and Federal Rule of Civil Procedure 4(k).

## VENUE

11. Venue is proper as to Ubisoft, Inc. under 28 U.S.C. § 1400(b). Ubisoft, Inc. "resides" in this District because it is incorporated in California and maintains its principal place of business in this District at 300 Mission Street, San Francisco, California. See *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258 (2017); *In re BigCommerce, Inc.*, 890 F.3d 978 (Fed. Cir. 2018). In addition and in the alternative, Ubisoft, Inc. has committed acts of infringement in this District and maintains a regular and established place of business in this District at 300 Mission Street, San Francisco, California.

12. Venue is proper as to Ubisoft Entertainment SA under 28 U.S.C. § 1391(c)(3) because it is a defendant not resident in the United States and therefore may be sued in any judicial district. See In re HTC Corp., 889 F.3d 1349 (Fed. Cir. 2018).

## DIVISIONAL ASSIGNMENT

13. This action arises under the patent laws of the United States and is therefore an Intellectual Property Act action that, under the Court's Assignment Plan (General Order No. 44) and Civil Local Rule 3-2(c), is assigned on a district-wide basis. Accordingly, there is no basis for assignment of this action to any particular division of the Court.

## THE ASSERTED PATENTS

14. United States Patent No. 10,528,129, entitled "Immersive Displays," duly and

lawfully issued on January 7, 2020. A true and correct copy of the '129 Patent is attached as Exhibit A.

15.    United States Patent No. 9,977,495, entitled "Immersive Displays," duly and lawfully issued on May 22, 2018. A true and correct copy of the '495 Patent is attached as Exhibit B.

16.    The named inventors of each Asserted Patent are Brian Shuster and Gary Stephen Shuster. The Asserted Patents are part of the same patent family and share a common written description directed to immersive displays.

17.    Utherverse Digital, Inc. is the owner by assignment of all right, title, and interest in and to each of the Asserted Patents, including the right to sue for and recover damages for past, present, and future infringement. Each Asserted Patent identifies "Utherverse Digital Inc." as assignee on its face. The '129 patent is assigned to Utherverse Digital, Inc. on Reel 44598, Frame 0836, recorded January 11, 2018. No other assignment is on record for the '129 patent.  The '495 patent is assigned to Utherverse Digital, Inc. patent is assigned to Utherverse Digital, Inc. on Reel 40048, Frame 0178, recorded October 18, 2016. This is the only valid assignment on record for the '495 patent. There is a second assignment, dated May 6, 2015 and recorded May 14, 2015, from "Bisaga, Gary J" and "Huffman, Jeffrey S." to "Pearson Education, Inc.", Reel 35644, Frame 0100 (the "Erroneous Assignment"). The Erroneous Assignment is Exhibit F to the Complaint. It purports to assign application number 14677519. While this is the application number for the '495 patent, the assignment was made by persons having no right, title or interest in the patent and is invalid. This appears to be a drafting error by Kilpatrick Townsend & Stocktown LLP. The Erroneous Assignment identifies the title of the patent as "Automated Content Injection", filed on March 24, 2015. The '495 patent is titled "Immersive Displays" and was filed on April 2, 2015. The intended patent for the assignment was Application No. 14/667,519 – reflecting an erroneous "7" in the Erroneous Assignment where it should have been a "6". Otherwise, the application number is identical. The Erroneous Assignment from a party with no interest in the patent has no effect on the ownership of the patent.

18.    The Asserted Patents are valid and enforceable.

**THE PATENTED TECHNOLOGY AND ITS IMPROVEMENTS TO IMMERSIVE-**

## DISPLAY FUNCTIONALITY

19.    The inventions claimed in the Asserted Patents are directed to specific, concrete technical improvements in the functioning of immersive-display systems. They are not directed to any abstract idea; they solve a technical problem that arises specifically in, and is unique to, immersive-display technology.

20.    Head-mounted immersive displays present separate images very close to each of the user's eyes and occlude the user's view of the real world, including the user's own nose and other stable facial reference points on which the human visual system continuously relies. The resulting conflict between the rapidly changing imagery presented by the display and the user's vestibular and proprioceptive senses is a technical problem, particular to immersive displays, that causes disorientation, discomfort, and motion sickness in users.

21.    As of the September 2014 priority date of the Asserted Patents, conventional approaches to this problem—such as narrowing the displayed field of view or otherwise degrading or blanking the displayed imagery—mitigated discomfort ineffectively, and even then only at the cost of immersion, image quality, or the display's intended operation.

22.    The Asserted Patents disclose and claim a specific technical solution implemented in the operation of the immersive display itself: obtaining the information used to render the separate first-eye and second-eye images, and removing or replacing a defined area of each eye's image with a static image corresponding to a facial feature such as a nose, so that a stable visual reference persists at a fixed location in the user's field of view while the remainder of the rendered scene continues to change. In certain claimed embodiments, the static image is rendered at a lower resolution and/or a lower refresh rate than the remainder of the image, conserving the display system's rendering and processing resources.

23.    This claimed approach improves the functioning of the immersive-display technology itself: it reduces motion sickness and improves user comfort while preserving immersion and the display's normal operation, and it accomplishes this through a particular, concrete manipulation of the separately-rendered per-eye images rather than through any conventional or generic computing operation. The improvement is necessarily rooted in immersive-display

technology and addresses a problem that does not arise outside of that technology.

24. The specific techniques recited in the asserted claims were not well-understood, routine, or conventional in the field of immersive displays as of the priority date. The asserted claims do not preempt the general concept of using a visual reference to reduce motion sickness; they address the particular claimed technique of replacing defined areas of the separately-rendered first-eye and second-eye images with static images corresponding to a facial feature, including a nose, as recited in the claims, and leave ample other approaches available to others.

## DEFENDANTS' ACCUSED PRODUCTS AND CONDUCT

25. Defendants have made, used, tested, demonstrated, offered for sale, sold, distributed, and imported into the United States and this District VR software products that practice the inventions claimed in the Asserted Patents, and have induced others to do the same.

26. **Assassin's Creed Nexus VR**. On information and belief, Ubisoft publicly launched Assassin's Creed Nexus VR on November 16, 2023 for the Meta Quest 2, Meta Quest 3, and Meta Quest Pro VR headsets. Ubisoft's official announcement states that "Assassin's Creed Nexus VR will launch for Meta Quest devices – including Meta Quest 2, Meta Quest 3, and Meta Quest Pro – on November 16." The Accused Assassin's Creed Nexus Product is a first-person, stereoscopic VR title that renders separate images to the user's left and right eyes.

27. The Accused Assassin's Creed Nexus Product implements a comfort feature that Ubisoft itself calls a "virtual nose." *See* Exh. G. In its official Assassin's Creed Nexus VR Accessibility Spotlight (published November 10, 2023), Ubisoft explains that "[w]hen wearing a VR headset, users generally don't see their real nose anymore, as it's covered by the headset," which "can be a bit disturbing for the brain, as our vision system is used to seeing our nose constantly in our field of view," and that "[r]ecreating a virtual nose allows to put back this reference in the field of view of the players in VR and helps with comfort." Ubisoft's own statement thus identifies both the accused feature—a recreated, static virtual nose persisting in the field of view—and Ubisoft's purpose for it. A true and correct copy of Ubisoft's Assassin's Creed Nexus VR Accessibility Spotlight is attached as Exhibit G.

28. On information and belief, when the virtual-nose feature of the Accused Assassin's

Creed Nexus Product is enabled, the Accused Assassin's Creed Nexus Product replaces a defined area of the left-eye image with a static nose image and a defined area of the right-eye image with a static nose image, such that a static virtual nose corresponding to a nose persists in the user's field of view while the remainder of the displayed scene changes. Ubisoft further describes the virtual nose as one of several customizable comfort features, alongside "dynamic vignettes" that "sense when there is motion in the player's field of view, and dynamically hide the peripheral vision."

29. **Eagle Flight**. On information and belief, Ubisoft released Eagle Flight for the Oculus Rift on October 18, 2016, for PlayStation VR on November 8, 2016, and for the HTC Vive on December 20, 2016, and Eagle Flight remains available for purchase and use in the United States, including on the Steam and Meta (Oculus) storefronts, as of the filing of this Complaint. The Accused Eagle Flight Product is a first-person, stereoscopic VR title that renders separate images to the user's left and right eyes.

30. The Accused Eagle Flight Product renders a fixed eagle's beak in the lower portion of the user's field of view as a stable visual reference. Ubisoft's game director for Eagle Flight, Olivier Palmieri, has publicly explained: "With a VR headset, our eyes don't see the nose anymore, and our brain is destabilised. In Eagle Flight, the beak allows us to bring back that simulated nose effect and give the required stabilisation to be comfortable." On information and belief, the Accused Eagle Flight Product replaces a defined area of the left-eye image and a defined area of the right-eye image with a static beak image that functions as a recreated, simulated nose reference persisting in the user's field of view while the remainder of the displayed scene changes.

31. On information and belief, in developing, building, testing, debugging, performing quality assurance on, demonstrating, marketing, and distributing the Accused Products, Defendants made and used software copies, executable builds, and VR headsets loaded with the Accused Products that embody the inventions claimed in the Asserted Patents.

32. On information and belief, Defendants further encourage and instruct their customers and end users to operate the Accused Products in their ordinary and intended manner, including with the accused comfort features enabled, through the design of the Accused Products and through menus, settings, presets, instructions, help articles, marketing, and promotional materials, thereby

causing those users to practice the inventions claimed in the Asserted Patents.

### PRE-SUIT KNOWLEDGE AND NOTICE

33.    On or about May 13, 2026, Plaintiff, through Gary Shuster on behalf of Utherverse Digital, Inc., sent written correspondence to Ubisoft identifying members of Plaintiff's patent family—including the '495 Patent and the '129 Patent—and identifying Ubisoft's use of a virtual beak in Eagle Flight and a virtual nose option in Assassin's Creed Nexus VR, and inviting a licensing or acquisition discussion. A true and correct copy of that correspondence is attached as Exhibit C.

34.    Although that correspondence was framed constructively and stated that it was not an accusation of infringement or a threat of litigation, it placed Ubisoft on actual notice of the existence of Plaintiff's patent family, including the Asserted Patents, and of Plaintiff's position that Ubisoft's VR comfort implementations implicated that family. At a minimum, Defendants have had knowledge of the Asserted Patents and of their infringement no later than service of this Complaint, including the claim charts attached as Exhibits D and E.

35.    The asserted independent claims include method claims that are not subject to the marking requirement of 35 U.S.C. § 287. To the extent § 287 otherwise applies, Plaintiff has complied with its requirements; no marking was required because Plaintiff did not make, use, offer to sell, or sell within the United States any patented article requiring marking, and/or Defendants received actual notice as alleged above. Filing of this Complaint constitutes notice under 35 U.S.C. § 287.

### COUNT I

### DIRECT INFRINGEMENT OF THE '129 PATENT (35 U.S.C. § 271(a))

36.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

37.    Defendants have directly infringed and continue to directly infringe one or more claims of the '129 Patent, literally and/or under the doctrine of equivalents, including at least claims 1 and 11, by making, using, testing, demonstrating, offering for sale, selling, distributing, and importing the Accused Products and software copies and builds embodying the claimed inventions, in violation of 35 U.S.C. § 271(a).

38.    By way of example, and as set forth in the claim chart attached as Exhibit D, the

Accused Assassin's Creed Nexus Product practices each limitation of at least claim 11 of the '129 Patent. The Accused Assassin's Creed Nexus Product is non-transitory computer-readable code, executable by at least one processor of a computing device, that obtains the information used to display first images in front of a first eye and second images in front of a second eye of a user; provides adjusted information by replacing a first area of the first images with a first static image and a second area of the second images with a second static image; and displays the adjusted information so as to provide static images corresponding to at least a nose—the "virtual nose"—as the remainder of the displayed scene changes.

39.    By way of further example, the Accused Assassin's Creed Nexus Product practices each limitation of at least claim 1 of the '129 Patent, which recites a corresponding method of providing information for display on an immersive display.

40.    By way of further example and in the alternative, the Accused Eagle Flight Product infringes at least claims 1 and 11 of the '129 Patent under the doctrine of equivalents. The fixed beak rendered by the Accused Eagle Flight Product performs substantially the same function (providing a stable, recreated nose-like reference in the lower field of view), in substantially the same way (replacing a defined area of each eye's image with a static image that persists while the remainder of the scene changes), to achieve substantially the same result (restoring the missing visual reference and reducing motion sickness and discomfort), as the static images corresponding to a nose recited in the asserted claims.

41.    Defendants' infringement of the '129 Patent has been and continues to be without license or authorization from Plaintiff.

42.    As a direct and proximate result of Defendants' infringement of the '129 Patent, Plaintiff has been and continues to be damaged in an amount to be proven at trial, but in no event less than a reasonable royalty under 35 U.S.C. § 284.

## COUNT II

### INDUCED INFRINGEMENT OF THE '129 PATENT (35 U.S.C. § 271(b))

43.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

44.    Defendants have induced and continue to induce infringement of one or more claims

of the '129 Patent, including at least claims 1 and 11, in violation of 35 U.S.C. § 271(b), by actively and knowingly encouraging, instructing, and enabling their customers and end users to use the Accused Products in their ordinary and intended manner, including with the accused comfort features enabled, in a manner that practices the claimed inventions.

45.    Defendants have known of the '129 Patent at least as of Plaintiff's pre-suit correspondence and, in any event, no later than service of this Complaint and the accompanying claim charts. With such knowledge, Defendants have specifically intended to cause, and have known or have been willfully blind to the fact that, the acts they encourage constitute infringement of the '129 Patent, yet have continued to market, distribute, support, and instruct the use of the Accused Products and their accused functionalities.

46.    As a direct and proximate result of Defendants' inducement, Plaintiff has been and continues to be damaged in an amount to be proven at trial, but in no event less than a reasonable royalty under 35 U.S.C. § 284.

## COUNT III

### DIRECT INFRINGEMENT OF THE '495 PATENT (35 U.S.C. § 271(a))

47.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

48.    Defendants have directly infringed and continue to directly infringe one or more claims of the '495 Patent, literally and/or under the doctrine of equivalents, including at least claim 1, by making, using, testing, demonstrating, offering for sale, selling, distributing, and importing the Accused Products and software copies and builds embodying the claimed inventions, in violation of 35 U.S.C. § 271(a).

49.    By way of example, and as set forth in the claim chart attached as Exhibit E, the Accused Assassin's Creed Nexus Product practices each limitation of at least claim 1 of the '495 Patent. The Accused Assassin's Creed Nexus Product obtains the information used to display a first image in front of a first eye and a second image in front of a second eye of a user; removes part of that information so as to replace a first area of the first image and a second area of the second image; and displays a first static image in the first area and a second static image in the second area, wherein the first static image comprises a first nose image and the second static image comprises a second

nose image—namely, the "virtual nose" rendered to each eye.

50.   By way of further example and in the alternative, the Accused Eagle Flight Product infringes at least claim 1 of the '495 Patent under the doctrine of equivalents, because the fixed beak it renders to each eye performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the first and second nose images recited in the claim.

51.   Defendants' infringement of the '495 Patent has been and continues to be without license or authorization from Plaintiff.

52.   As a direct and proximate result of Defendants' infringement of the '495 Patent, Plaintiff has been and continues to be damaged in an amount to be proven at trial, but in no event less than a reasonable royalty under 35 U.S.C. § 284.

## COUNT IV

### INDUCED INFRINGEMENT OF THE '495 PATENT (35 U.S.C. § 271(b))

53.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

54.   Defendants have induced and continue to induce infringement of one or more claims of the '495 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(b), by actively and knowingly encouraging, instructing, and enabling their customers and end users to use the Accused Products in their ordinary and intended manner, including with the accused comfort features enabled, in a manner that practices the claimed inventions, with knowledge of the '495 Patent as alleged above and with the specific intent to cause infringement or willful blindness thereto.

55.   As a direct and proximate result of Defendants' inducement, Plaintiff has been and continues to be damaged in an amount to be proven at trial, but in no event less than a reasonable royalty under 35 U.S.C. § 284.

### RESERVATION REGARDING ENHANCED DAMAGES

56.   Plaintiff reserves the right to seek enhanced damages under 35 U.S.C. § 284 for Defendants' continued infringement after Defendants have been served with this Complaint and the accompanying claim charts, to the extent the evidence shows that such continued infringement is willful and egregious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, and grant the following relief:

A.    A judgment that Defendants have infringed, directly and/or by inducement, one or more claims of the '129 Patent and the '495 Patent;

B.    An award of damages adequate to compensate Plaintiff for Defendants' infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, together with supplemental damages, pre-judgment and post-judgment interest, and costs;

C.    A permanent injunction enjoining Defendants and their officers, agents, employees, and all persons acting in concert with them from further infringement of the Asserted Patents or, in the alternative, an award of an ongoing royalty for continued post-judgment infringement;

D.    An order requiring Defendants to account for all infringing acts not otherwise presented at trial;

E.    A judgment that this is an exceptional case and an award to Plaintiff of its reasonable attorneys' fees and costs under 35 U.S.C. § 285;

F.    Enhanced damages under 35 U.S.C. § 284 to the extent supported by the evidence; and

G.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

DATED: June 18, 2026

Respectfully submitted,

**/s/ Gary Shuster**

**Gary Shuster, CA SBN 162379**
UTHERVERSE   DIGITAL,   INC.   LEGAL

COMPLAINT FOR PATENT INFRINGEMENT

12

DEPT.
102-80A 6th St.
New Westminster, BC V3L 5B3, Canada
Telephone: (604) 417-5002
Facsimile: (559) 272-2222
gary@shuster.com

Attorneys for Plaintiff
UTHERVERSE DIGITAL, INC.

# EXHIBIT A

US010528129B2

(12) **United States Patent**
Shuster et al.

(10) **Patent No.:** **US 10,528,129 B2**
(45) **Date of Patent:** *****Jan. 7, 2020**

(54) **IMMERSIVE DISPLAYS**

(71) Applicant: **UTHERVERSE DIGITAL INC.,**
Vancouver (CA)

(72) Inventors: **Brian Shuster**, Vancouver (CA); **Gary Stephen Shuster**, Vancouver (CA)

(73) Assignee: **Utherverse Digital Inc.**, Vancouver (CA)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 11 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/868,182**

(22) Filed: **Jan. 11, 2018**

(65) **Prior Publication Data**

US 2018/0136723 A1     May 17, 2018

**Related U.S. Application Data**

(63) Continuation of application No. 14/677,519, filed on Apr. 2, 2015, now Pat. No. 9,977,495.

(60) Provisional application No. 62/052,975, filed on Sep. 19, 2014.

(51) **Int. Cl.**
**G06F 3/01** (2006.01)
**G02B 27/01** (2006.01)

(52) **U.S. Cl.**
CPC .............. **G06F 3/013** (2013.01); **G06F 3/011** (2013.01); **G06F 3/012** (2013.01); **G02B 2027/0141** (2013.01)

(58) **Field of Classification Search**
CPC ...................................................... G06F 3/011
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,850,352 | A | * | 12/1998 | Moezzi | ................ H04N 13/139 |
| | | | | | 345/419 |
| 5,905,499 | A | * | 5/1999 | McDowall | .............. G06T 15/10 |
| | | | | | 345/419 |
| 9,214,052 | B2 | | 12/2015 | Knee et al. | |
| 9,977,495 | B2 | * | 5/2018 | Shuster | ................... G06F 3/011 |
| 10,217,286 | B1 | * | 2/2019 | Angel | ................... G06T 19/006 |
| 2005/0134945 | A1 | * | 6/2005 | Gallagher | ............. G06F 16/532 |
| | | | | | 358/527 |
| 2005/0234333 | A1 | | 10/2005 | Takemoto et al. | |

(Continued)

OTHER PUBLICATIONS

U.S. Appl. No. 14/677,519, Final Office Action dated Jul. 13, 2017.

(Continued)

*Primary Examiner* — Jitesh Patel
(74) *Attorney, Agent, or Firm* — Borden Ladner Gervais LLP; Geoffrey deKleine

(57) **ABSTRACT**

A method of providing information for display on a display of an immersive display. The method includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, excluding part of the information to yield adjusted information to occlude or replace first information from a first area of the first image and second information from a second area of a second image when displayed on the immersive display, and providing the adjusted information for displaying the first image absent the first area and the second image absent the second area on the immersive display.

**19 Claims, 3 Drawing Sheets**



100

NETWORK

**US 10,528,129 B2**

Page 2

(56)                     **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2008/0063384 A1 | 3/2008 | Tanaka et al. | |
| 2009/0325699 A1* | 12/2009 | Delgiannidis | A63F 13/06 |
| | | | 463/32 |
| 2011/0241991 A1* | 10/2011 | Ogura | G06K 9/00248 |
| | | | 345/158 |
| 2012/0281066 A1* | 11/2012 | Ohbitsu | H04N 13/194 |
| | | | 348/43 |
| 2013/0141419 A1* | 6/2013 | Mount | G06F 3/011 |
| | | | 345/419 |
| 2013/0250382 A1 | 9/2013 | Wiltshire et al. | |
| 2013/0321406 A1* | 12/2013 | Harrold | G02B 6/0011 |
| | | | 345/419 |
| 2014/0160129 A1* | 6/2014 | Sako | G06F 3/011 |
| | | | 345/427 |
| 2014/0285428 A1 | 9/2014 | Holz | |
| 2015/0015666 A1 | 1/2015 | Kwon et al. | |
| 2015/0078621 A1 | 3/2015 | Choi et al. | |
| 2015/0154783 A1 | 6/2015 | Grundhofer et al. | |
| 2015/0243078 A1* | 8/2015 | Watson | G02B 27/2228 |
| | | | 345/547 |
| 2015/0294504 A1 | 10/2015 | Daon | |
| 2018/0096533 A1* | 4/2018 | Osman | A63F 13/25 |

OTHER PUBLICATIONS

U.S. Appl. No. 14/677,519, Non-Final Office Action dated Jul. 29, 2016.
U.S. Appl. No. 14/677,519, Notice of Allowance dated Jan. 26, 2018.

* cited by examiner

U.S. Patent     Jan. 7, 2020     Sheet 1 of 3     US 10,528,129 B2



FIG. 1



FIG. 2



FIG. 3

FIG. 4

US 10,528,129 B2

**1**

## IMMERSIVE DISPLAYS

### FIELD OF TECHNOLOGY

The present disclosure relates to immersive displays such as three-dimensional (3D) displays for displaying virtual or augmented reality environments.

### BACKGROUND

Immersive displays are becoming increasingly popular for the purpose of playing games in a virtual reality environment. These immersive displays may also be utilized for applications other than gaming, including, for example, augmented reality applications. The virtual world or augmented-reality is currently commonly perceived by the user based on two images, with each of the two images displayed close to a respective one of the user's eyes.

Such displays are often head-mounted and in many cases block out some or all of the real environment around the user in order to immerse the user, for example, in the virtual world. Thus, these displays may obstruct or block the user's vision of his or her surroundings. The virtual world or augmented-reality is perceived by the user based on images displayed very close to the user's eyes.

Improvements in immersive displays and applications or uses of such immersive displays are desirable.

### SUMMARY

According to one aspect, a method of providing information for display on an immersive display is provided. The method includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, excluding part of the information to yield adjusted information to occlude or replace first information from a first area of the first image and second information from a second area of a second image when displayed on the immersive display, and providing the adjusted information for displaying the first image absent the first area and the second image absent the second area on the immersive display.

According to another aspect, a method of providing information for display on a display of an immersive display includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, identifying a first area of the first image and a second area of the first image and identifying a third area of the second image and a fourth area of the second image, and displaying the first area of the first image and the third area of the second image utilizing first display attributes and displaying the second area of the first image and the fourth area of the second image utilizing second display attributes, wherein the second display attributes differ from the first display attributes.

### BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the present disclosure will now be described, by way of example only, with reference to the attached Figures, in which:

FIG. **1** is a system for providing a multi-user virtual event;

FIG. **2** is a simplified block diagram of an example of an immersive display of the system of FIG. **1**;

FIG. **3** is a flowchart illustrating an example of a method of providing information for display on an immersive display;

**2**

FIG. **4** is a flowchart illustrating an example of another method of providing information for display on an immersive display.

### DETAILED DESCRIPTION

For simplicity and clarity of illustration, reference numerals may be repeated among the figures to indicate corresponding or analogous elements. Numerous details are set forth to provide an understanding of the examples described herein. The examples may be practiced without these details. In other instances, well-known methods, procedures, and components are not described in detail to avoid obscuring the examples described. The description is not to be considered as limited to the scope of the examples described herein.

Because the display or displays of an immersive display may be very close to the user's eyes when the immersive display is worn by the user, the displays may render images and video in stereoscopic 3D to areas of the eyes that normally are presented with static non-stereoscopic 3D imagery, such as that part of a person's vision that normally sees the person's nose in one eye, and only monocular vision of the environment in that part of their field of view from the other eye. Presentation of stereoscopic 3D in areas not accustomed to seeing such imagery will very often cause motion sickness for the user wearing the display. Similarly, lack of the point of reference, which is removed when the nose and other normally static imagery that a person is accustomed to seeing in each separate eye is replaced with imagery from an immersive display, often causes the wearer to feel disoriented and also contributes to motion sickness. Additionally, a very high resolution, or large number of pixels, and a very high refresh rate is desirable in order to display images with sufficient clarity for virtual or augmented reality. Such high resolution and high refresh rate increases the demands on device resources such as processing power, memory, and bandwidth to transfer information to the immersive display.

The following describes an immersive display and a method of operating the immersive display. The method includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, excluding part of the information to yield adjusted information to occlude or replace first information from a first area of the first image and second information from a second area of a second image when displayed on the immersive display, and providing the adjusted information for displaying the first image absent the first area or in which a static image is displayed and the second image absent the second area or in which a static image is displayed on the immersive display. Thus, the display may replace the information for display in the first area with a static image to simulate, for example, a nose. Similarly, the display may replace the information for display in the second area with a static image to simulate, for example, a nose.

The following also describes a method of providing information for display on a display of an immersive display that includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, identifying a first area of the first image and a second area of the first image and identifying a third area of the second image and a fourth area of the second image, and displaying the first area of the first image and the third area of the second image utilizing first display attributes and displaying the

US 10,528,129 B2

3                                                          4

second area of the first image and the fourth area of the second image utilizing second display attributes. The second display attributes differ from the first display attributes.

A system 100 for providing information for display on an immersive display is illustrated in FIG. 1. The system includes servers 102 that are coupled to a network 104 or networks, which includes the internet and may optionally include a cellular network through which several client devices, nodes, or terminals may be connected. In the example of FIG. 1, five client devices are coupled to the network 104, including desktop computers 106, 108, 110, a laptop computer 112 which is coupled to the network wirelessly through a modem 114, and a smartphone 116. The servers 102 store and execute software or firmware and communicate and cooperate with software and firmware on the client devices 106, 108, 110, 112, 116 via the network. The software and firmware on the client devices 106, 108, 110, 112, 116 also communicate and cooperate with software and firmware on respective immersive displays that may be worn by the users.

The servers 102, utilizing the software or firmware, provide the virtual environment, which may be a three-dimensional virtual environment. The environment may be any suitable environment for a game, a social network or interaction site, a meeting environment, such as a boardroom or meeting room, a classroom, a conference room or any other room or other scene. The virtual environment provided is dependent on the application and may be dependent on any other suitable factor such as the number of participants.

The servers 102 also manage authorization of users via client devices to facilitate participation in the virtual environment by avatars representing the users. The avatars enter the virtual environment to take part in or attend an event such as a game, a social network event or interaction, a meeting, class, conference or other event.

The images, including the environment, may be provided to the client devices 106, 108, 110, 112, 116 for display utilizing the immersive displays, which may be, for example, head-mounted displays worn by the users.

A simplified block diagram of an example of an immersive display 200 is shown in FIG. 2. The immersive display 200 includes multiple components, such as a main processor 202 that controls the overall operation of the immersive display 200.

The main processor 202 interacts with other components of the immersive display 200, including, for example, a temporary storage device 204, a memory 206, a display device 208, a speaker 210, an auxiliary input/output (I/O) subsystem 212, external cameras 214, one or more internal cameras 216, one or more microphones 218, an orientation/movement sensor 220, one or more proximity sensors 222, a communication subsystem 224, short-range communications 226, a power source 228, and, optionally, other subsystems 230.

The temporary storage device 204 may be, for example, Random Access Memory (RAM) that stores data that is processed by the main processor 202. The memory 204, such as flash memory, is utilized for persistent storage.

The immersive display 200 provides video output through the display 208, which includes an interface, a controller and a pair of displays to display images. The images displayed include a respective image in front of each one of the user's eyes such that a right side image is displayed in front of a user's right eye and a left side image is displayed in front of a user's left eye. In addition to the display 208, output is provided via the speaker 210 or other audio output such as headphones or earphones. The auxiliary input/output (I/O)

subsystem 212 includes an interface through which, for example, a USB controller or other peripheral device may be connected.

Input to the immersive display may be provided via external sensors or input devices such as the external cameras 214 mounted on the body of the immersive display 200. The external cameras 214 may include multiple cameras to obtain images extending around the user, i.e., 360° around the user. The external cameras 214 may also include cameras to obtain images in an upward direction from the user, and in a downward direction from the user. Each of the cameras includes the functional components for operation of the camera, including the lens, the image sensor, and, optionally, a light sensor and light source, such as infrared light emitting diodes (LEDs). Thus, the cameras provide images of the user's environment or surroundings. The cameras may be one or more of visual light cameras, 3D sensing cameras, light field cameras, forward looking infrared cameras, near infrared cameras, ultraviolet cameras, or other imaging devices.

The terms upward and downward are utilized herein to generally describe direction of view of the external cameras 214 relative to the user when the immersive display is worn by the user and the user is in an upright position, and such terms are not otherwise limiting.

The one or more internal cameras 216, referred to herein as the internal camera 216, may be mounted on an inside of the body of the immersive display and includes the functional components for operation of each internal camera, including the lens, the image sensor, and a light source, which may be a light source in the non-visible spectrum, such as infrared LEDs. Although the interior of the immersive display 200 may be dark because exterior light is blocked out or partially blocked out, the light source provides sufficient light for use of the internal camera 216.

The one or more microphones, referred to herein as the microphone 218, may also be mounted in the body of the immersive display 200 to provide input by converting audible information to electrical signals, which may be processed by the main processor 202 and may be transmitted to another electronic device to which the immersive display 200 is coupled. For example, the immersive display may be coupled to a smart-phone, a laptop computer, a tablet, a desktop computer, a game device, and any other suitable electronic device.

The main processor 202 also receives signals from the orientation/movement sensor 220, which is coupled to the body of the immersive display 200. The orientation/movement sensor may be, for example, an accelerometer, a gyro sensor, or any other suitable sensor or combination of sensors that is or are utilized to detect direction of movement, direction of gravitational forces, and reaction forces so as to determine, for example, the orientation of the immersive display 200 and the movement of the immersive display 200.

The one or more proximity sensors, referred to herein as the proximity sensors 222, may provide additional input to the main processor 202 to detect the presence of objects that are near or proximal to the sensor and thus to the user when the immersive display 200 is in use. The proximity sensors 222 may be any suitable proximity sensors such as a capacitive or photoelectric proximity sensor.

The communication subsystem 224 receives signals from another electronic device such as the client devices 106, 108, 110, 112, 116 shown in FIG. 1, and sends signals to the other electronic device to which the immersive display is coupled. Thus, for example, the signals from the microphone 218 or

US 10,528,129 B2

5

signals from the external cameras **216** or from the internal camera **216** may be sent via the communication subsystem **224**. The communication subsystem **224** is also responsible for receiving signals from the other electronic device for processing by the main processor **202** to cause images, which may include video, to be displayed on the display **208** and for audio to be output through the speaker **210**.

The immersive display **200** optionally includes short-range communications **226** to perform various communication functions. For example, the immersive display **200** may include Bluetooth or infrared (IR) communications capability, for example, for communicating with a peripheral device or accessory.

The power source **228** may be one or more rechargeable batteries or a port to an external power supply to power the immersive display **200**.

The systems and subsystems that interact with the main processor **202** and are described herein are provided as examples only. Other subsystems **230** may also interact with the main processor **202**.

Utilizing the images from the internal camera **216**, the main processor **202** may be operable to track eye motion. To track eye motion, the user's pupils may be tracked when the immersive display **200** is in use. The eye motion tracking may also facilitate determination of what a user is looking at, for example, by triangulation to determine depth of an object or image that a user is looking at. Alternatively, the internal camera **216** may identify or track changes in muscles or muscle motion around at least one of the user's eyes to identify movement of the eye, or may track changes in shape of a lens of an eye or changes in shape of the lens of each eye to identify a focal distance, facilitating identification of the depth of focus of a user.

In one aspect, variable focal optical elements, such as the SuperFocus™ glasses may be utilized and controlled digitally to create a more realistic blur effect. Areas that are set to be blurred may be rendered with fewer pixels.

Based on the eye motion tracking, the direction that the user is looking may be identified. The direction may be, for example, an angle or angles, such as angular offset or offsets from straight ahead. Thus, when a user glances upwardly, downwardly, or to either side, the direction is identified and the images displayed utilizing the display **208** may be changed or adjusted based on the direction.

The main processor **202** is also operable to analyze the images from the internal camera to track or identify a change in facial expression. For example, the main processor **202** may utilize primary facial feature tracking by tracking features such as lips, nose, and eyes. Alternatively, or in addition, movement of parts of the face may be tracked. The main processor **202** may transmit facial expression data or an identification of the expression to the other electronic device to which the immersive display **200** is coupled via the communication subsystem **222**.

The main processor **202** is also operable to receive the image data from the external cameras and to transmit the data to the other electronic device, along with metadata for at least key frames for identifying the image data such that the images can be stitched together to provide images of the user's surroundings. Thus, the images from each of the cameras can be stitched together to obtain images of the user's entire surroundings.

When viewing images without using the immersive display **200**, a user's nose typically occludes part of the real space that is viewed. In other words, part of the real space cannot be seen without adjusting the direction or position of the head because the user's nose is in the line of sight or in

6

the line of the peripheral vision. In virtual reality or augmented reality viewed through the immersive display, corresponding areas may be occluded from display. Areas that would correspond to a user's nose are not displayed to increase the user's perception that the virtual or augmented reality space is real. Thus, no image is displayed in the areas that would correspond to the location of a user's nose or a static image may be displayed. By providing no image or a static image in such areas, a stable reference is provided in the user's line of sight and the chance of experiencing motion sickness or the severity of the motion sickness experienced while wearing the immersive display **200** may be reduced.

In addition, because the display **208** of the immersive display **200** is very close to the user's eyes when the immersive display **200** is worn by the user, a very high resolution, or large number of pixels, and a very high refresh rate is desirable in order to display images with sufficient clarity for virtual or augmented reality. Such high resolution and high refresh rate utilizes more processing power. Replacing parts of the images with static images to simulate a nose reduces the number of pixels for which information is processed for display, thus reducing one or more of processing requirements, memory requirements, and bandwidth utilized to transfer information to the immersive display.

A flowchart illustrating a method of providing information for display on a display of an immersive display is shown in FIG. **3**. The method may be carried out by software executed, for example, by one or more of the servers **102**, by one or more of the client devices **106**, **108**, **110**, **112**, **116**, by the main processor **202** of the immersive display **200**, or by a combination of these devices. Coding of software for carrying out such a method is within the scope of a person of ordinary skill in the art given the present description. The method may contain additional or fewer processes than shown and/or described, and may be performed in a different order. Computer-readable code executable by at least one processor to perform the method may be stored in a computer-readable medium, such as a non-transitory computer-readable medium.

Information is obtained for displaying on the display **208** of the immersive display **200** at **302**. The information includes information for displaying a right side image in front of a right eye and a left side image in front of a left eye of a user of the immersive display **200** to provide a virtual 3-D image for the user. The information may be information from an application and is utilized to display a scene from a game, a social network or interaction site, a meeting environment, such as a boardroom or meeting room, a classroom, a conference room or any other room or other scene.

Parts of the information are identified for exclusion from the information or for replacement with a static image at **304**. The parts of the information that are identified correspond to a first area of the right side image and a second area of the left side image. The first area and the second area correspond to areas at which a user's nose would occlude the field of vision in real space. Thus, the first area is at a left side of the right side image and the second area is at a right side of the left side image.

Other parts of the information that correspond to other areas may also be identified for exclusion or for replacement with static images. For example, in addition to the areas that correspond to the user's nose, other areas that correspond to typical locations of cheekbones or eye sockets or both may be occluded from the field of vision. The information that

US 10,528,129 B2

7

corresponds to these areas of each of the right side image and the left side image may also be identified for exclusion, which may further increase the perception that the virtual reality space or augmented reality space is real.

The parts of the information are removed from the information obtained to yield adjusted information at **306**. The adjusted information includes less information or data than the information obtained at **302**, prior to removing the identified information. Alternatively, the parts of the information are replaced with static images to simulate a user's nose. The static images may be displayed at a lower resolution and may be displayed at a slower refresh rate.

The adjusted information is then provided at **308** for displaying the first image without the first area and the second image without the second area, corresponding to the areas at which the user's nose is present. The static images may be displayed in the first area and the second area.

The method illustrated in FIG. **3** is continuous such that the images are continuously updated on the display **208** of the immersive display **200** to display or play virtual reality or augmented reality video on the immersive display **200**.

By providing no image or a static image in the areas that correspond to the nose or other occluded areas, the amount of information that is required for displaying images on the display **208** is reduced. The amount of information required for rendering is reduced. Thus, the area of the display **208** on which information is rendered is reduced. The display **208** may also or alternatively be reduced in size, such that the display **208** does not extend to those areas at which information is not rendered. Alternatively, the display resolution may be reduced for such areas, for example, for rendering a static image. In one example, the amount of information transmitted from the one or more servers **102** may be reduced.

As indicated above, the method illustrated in FIG. **3** and described above may be carried out by software executed, for example, by one or more of the servers **102**, by one or more of the client devices **106**, **108**, **110**, **112**, **116**, by the main processor **202** of the immersive display **200**, or by a combination of these devices.

Optionally, the static image that is displayed on occluded areas of the display may be customizable or configurable by the user. For example, the static image may be configured by the user to configure attributes of the image, such as size, shape, and skin tone of the static image, to simulate the user's nose. For example, such configuring may be carried out by selection of options from a menu or utilizing any other suitable method.

According to one example, the method is carried out at one or more of the servers **102** such that the server obtains the information from an application executed at the one or more servers **102** at **302**. The one or more servers **102** also identifies the parts of the information for exclusion, including the first area of the right side image and the second area of the left side image at **304** and the one or more servers **102** removes the information at **306** to yield adjusted information that excludes the identified information. The adjusted information is provided by the one or more servers **102** at **308**, to the immersive display **200** by sending the adjusted information to the immersive display **200**, via the respective client device.

According to another example, the method is carried out at the client device **106**, **108**, **110**, **112**, **116**. In this example, the client device obtains the information from the one or more servers **102** or from the immersive display **200**, for example, from images captured utilizing the external camera or cameras **216** of the immersive display **200** at **302**. The

8

client device **106**, **108**, **110**, **112**, **116** identifies the parts of the information for exclusion, including the first area of the right side image and the second area of the left side image at **304** and the client device **106**, **108**, **110**, **112**, **116** removes the information at **306** to yield adjusted information that excludes the identified information. The adjusted information is provided by the client device **106**, **108**, **110**, **112**, **116**, to the immersive display **200** by sending the adjusted information to the immersive display **200** for displaying, on the display **208**, the right side image excluding at least the first area and the left side image excluding at least the second area.

According to yet another example, the method is carried out at the immersive display **200**. According to this example, the main processor **202** of the immersive display **200** obtains the information from the respective client device **106**, **108**, **110**, **112**, **116**, or from the one or more servers **102** via the respective client device **106**, **108**, **110**, **112**, **116**, or, for example, from images captured utilizing the external camera or cameras **216** of the immersive display **200** at **302**. The processor **202** identifies the parts of the information for exclusion, including the first area of the right side image and the second area of the left side image at **304** and the processor **102** removes the information at **306** to yield adjusted information that excludes the identified information. The adjusted information is provided by the processor **102**, to the display **208** of the immersive display **200** by sending the adjusted information to the immersive display **200** for displaying the right side image excluding at least the first area and the left side image excluding at least the second area.

As described above, the images displayed, utilizing the pair of displays, include a respective image in front of each one of the user's eyes such that a right side image is displayed in front of a user's right eye and a left side image is displayed in front of a user's left eye. Rather than utilizing generally symmetrical circular, rectangular or simple geometric shaped displays designed to maximize display of potentially viewable areas to all areas of each eye of the user, the immersive display may be constructed with displays that are shaped to only display environmental imagery to those areas of each eye that typically see such imagery in the normal course of use. For example, each display may be generally circular with the exception of a notch or area corresponding to a user's nose. Thus, each display is shaped to occlude an area to correspond with the user's nose. The displays may also be shaped to occlude areas corresponding to other facial features such as eye sockets and cheekbones.

Such shaped displays may be advantageous because areas of images are occluded by the shape of each display rather than by software, reducing processing time. Additionally, by reducing the total area of each display compared to a geometrically simple display, the total number of pixels of the display may be reduced compared to a circular display, for example, while still displaying images at the same very high resolution.

Optionally, an obstruction may be inserted into the body to cooperate with the body to simulate the nose. The obstruction may cooperate with the body of the immersive display **200** such that the obstruction is mechanically retained in the immersive display.

According to another alternative, the body of the immersive display **200** may be configured to receive obstructions to occlude areas of the display. In this example, a first obstruction is insertable into the body to cooperate with the body to occlude a first area of the first image and a second obstruction is insertable into the body to cooperate with the

US 10,528,129 B2

9

body to occlude a second area of the second image. The first obstruction and the second obstruction are sized and shaped to simulate a user's nose when inserted into the display to occlude the areas of the display.

A flowchart illustrating another method of providing information for display on a display of an immersive display is shown in FIG. 4. The method may be carried out by software executed, for example, by the one or more of the client devices 106, 108, 110, 112, 116, or by the main processor 202 of the immersive display 200, or by a combination of these devices. Coding of software for carrying out such a method is within the scope of a person of ordinary skill in the art given the present description. The method may contain additional or fewer processes than shown and/or described, and may be performed in a different order. Computer-readable code executable by at least one processor to perform the method may be stored in a computer-readable medium, such as a non-transitory computer-readable medium.

When viewing images utilizing the immersive display 200, a high definition image in the center of the field of view of the user provides a sharper and more realistic image for an improved experience or more realistic experience than a lower definition image. Peripheral areas of vision, however, may be rendered at lower definition or slightly out of focus. In fact, corrective lens eyeglasses generally correct for vision in an area centered on the field of view, for example, in a circle directly in front of the eye. Outside of this area, the eyeglasses may not correct for vision or correction may be reduced such that the areas outside the center of the field of view are out of focus or blurred for the user. Similarly, sunglasses generally reduce the amount of sunlight coming into an area in front of each eye of the user. However, the sunlight may still enter the eye from other areas in the user's peripheral vision, around the sunglasses and thus, these other areas may appear overexposed. Thus, information outside of the area at the center of the field of view, also referred to as the peripheral area, may be displayed at a lower resolution than the information in the area at the center of the field of view, or at a lower refresh rate.

Information is obtained for displaying on the display 208 of the immersive display 200 at 402. The information includes information or data that is utilized by the display 208 to display the images. The information includes information for displaying the right side image in front of a right eye and the left side image in front of a left eye of a user of the immersive display 200 to provide a virtual 3-D image for the user. The information may be information from an application and is utilized to display a scene from a game, a social network or interaction site, a meeting environment, such as a boardroom or meeting room, a classroom, a conference room or any other room or other scene.

Parts of the information utilized to display the images are identified at 404 for displaying different areas at different resolution. Part of the information utilized for displaying the right side image is identified for displaying a peripheral area of the image at a lower resolution compared to the remainder of the image. Part of the information utilized for displaying the right side image is identified for displaying a peripheral area of the image at a lower resolution compared to the remainder of the image. For example, information utilized to display any area that is outside a circular or elliptical area at the center of the field of vision may be identified as the peripheral area. Information utilized to display the peripheral area of the right side image and information utilized to display the peripheral area of the left side image may be identified.

10

To identify the part of the information utilized to display the areas of the image that are outside the area at the center of the field of view, the information utilized to display the area of the image at the center of the field of view in each of the right side image and the left side image may alternatively be identified, thus distinguishing between the information utilized to display the area of the image that is at the center of the field of view and the information that is utilized to display the areas that are outside the center of the field of view.

Optionally, the images from the internal camera 216 of the immersive display 200 may be utilized by the main processor 202 to track one or each of the user's pupils to identify the direction that the user is looking. The field of view may be identified based on the direction that the user is looking. For example, for each of the right side image and the left side image, an area at the center of a field of view may be identified by a circular or elliptical area centered on the direction that the user is looking. The information that is utilized to display the area at the center of the field of view is identified, thus distinguishing between the information utilized to display the area of the image that is at the center of the field of view and the information that is utilized to display the areas that are outside the area at the center of the field of view.

Alternatively or additionally, the internal camera 216 may identify or track changes in muscles or muscle motion around at least one of the user's eyes to identify movement of the eye, or may track changes in shape of a lens of an eye or changes in shape of the lens of each eye to identify a focal distance, facilitating identification of direction and depth of focus of a user. The center of the field of view of each of the right side image and the left side image may be based on such tracking and the size of the area that is identified as the center of the field of view may also vary based on such tracking. For example, a smaller center of the field of view may be identified when the depth of focus is greater as a user is viewing an object perceived to be a greater distance away.

According to an alternative embodiment, information that is utilized to display the area at the center of the field of view may be obtained and the information utilized to display parts of the image in the peripheral area may be created. For example, the information utilized to display the pixels in the peripheral area around the area at the center of the field of view may be created at the respective client device or at the immersive display 200. The information may be created based on attributes of the displayed image in the area at the center of the field of view. Thus, the information to display the area at the center of the field of view is received at the respective client device and immersive display 200 and the information to display the peripheral area is created.

Information is provided to the display 208 of the immersive display 200 for displaying different areas utilizing different attributes at 406. For example, the right side image and the left side image are provided to the display 208 for displaying at 406. The area of the right side image that is at the center of the field of view is displayed utilizing first display attributes. The peripheral area of the right side image, outside the area at the center of the field of view, is displayed utilizing second display attributes. Similarly, the area of the left side image that is at the center of the field of view is displayed utilizing first display attributes and the peripheral area of the left side image, outside the center of the field of view, is displayed utilizing a second display attribute.

For example, the areas outside each area at the center of the field of view in each of the left side image and the right

US 10,528,129 B2

11

side image may be displayed at a lower resolution and with a lower refresh rate than each respective area at the centers of the field of view.

A plurality of parts of the information may be identified at **404** for each image. For example, information to display the area at the center of the field of vision may be identified. Information to display an intermediate area surrounding the area at the center of the field of vision may be identified and information to display an outer peripheral area may be identified. The information may be identified to display the area at the center of the field of vision at the highest resolution while displaying the intermediate area at a relatively lower, intermediate resolution, and displaying the outer peripheral area at a resolution that is lower than the intermediate area. In this example, three areas are identified in each of the right side image and the left side image and each of the areas are displayed utilizing different attributes. Other areas may be identified for displaying utilizing different attributes.

The method illustrated in FIG. **4** is continuous such that the images are continuously updated on the display **208** of the immersive display **200** to display or play virtual reality or augmented reality video on the immersive display **200**.

In addition or alternatively, the immersive display **200** may include adjustable corrective lenses positioned to be located in front of the user's eyes when the immersive display is worn by a user. The adjustable corrective lenses are utilized to adjustably correct the user's vision while the areas of the images that fall outside the lenses remain unadjusted and therefore blurred to the user who would otherwise wear corrective lens eyeglasses.

In one aspect, where resolution, processing power, and/or other elements are insufficient to render a full field, simulated obstructive objects may be placed in the field. For example, in a concert, a person sitting in front of the user may don a large virtual "hat" to obstruct the user's view and reduce the area of the display for which the image must be rendered.

The described embodiments are to be considered as illustrative and not restrictive. The scope of the claims should not be limited by the preferred embodiments set forth in the examples, but should be given the broadest interpretation consistent with the description as a whole. All changes that come with meaning and range of equivalency of the claims are to be embraced within their scope.

What is claimed is:

1. A method of providing information for display on a display of an immersive display, the method comprising:
   obtaining information utilized for displaying first images in front of a first eye and second images in front of a second eye of a user of the immersive display;
   providing adjusted information by removing part of the information to replace first information from a first area of the first images with a first static image in the first area, and second information from a second area of the second images with a second static image in the second area;
   displaying the adjusted information including first images with the first area replaced with the first static image and the second images with the second area replaced with the second static image on the immersive display, to provide static images corresponding to at least one of a nose or cheeks as a remainder of the information displayed in the first images and the second images changes.

12

2. The method according to claim **1**, wherein the information is obtained and the part of the information is replaced at a server.

3. The method according to claim **2**, wherein the adjusted information is provided by sending the adjusted information from the server to the immersive display.

4. The method according to claim **1**, wherein the information is obtained at a processor of the immersive display and the part of the information is replaced by the processor immersive display.

5. The method according to claim **1**, wherein obtaining comprises obtaining the information utilizing at least one external camera of the immersive display.

6. The method according to claim **1**, wherein obtaining comprises receiving the information from a server.

7. The method according to claim **1**, wherein the first static image comprises a first nose image and a second static image comprises a second nose image.

8. The method according to claim **1**, wherein the first static image and the second static image are displayed at a lower resolution than the remainder of the first images and the second images.

9. The method according to claim **1**, wherein the first static image and the second static image are displayed at a lower refresh rate than the remainder of the first images and the second images.

10. The method according to claim **1**, wherein replacing part of the information comprises replacing third information from a third area of the first images with a third static image and fourth information from a fourth area of the second images with a fourth static image, wherein the first area and the second area correspond to a location of a nose, and wherein the third area and the fourth area correspond to locations of cheekbones.

11. A non-transitory computer-readable medium having stored thereon, computer-readable code executable by at least one processor of a computing device to:
   obtain information utilized for displaying first images in front of a first eye and second images in front of a second eye of a user of the immersive display;
   provide adjusted information by removing part of the information to replace first information from a first area of the first images with a first static image in the first area, and second information from a second area of the second images with a second static image in the second area;
   display the adjusted information including first images with the first area replaced with the first static image and the second images with the second area replaced with the second static image on the immersive display, to provide static images corresponding to at least one of a nose or cheeks as a remainder of the information displayed in the first images and the second images changes.

12. An immersive display comprising:
   a body;
   at least one display on the inside of the body for displaying first images in front of a first eye and second images in front of a second eye of a user;
   a processor coupled to the display and operable to:
      obtain information utilized for displaying the first images in front of the first eye and the second images in front of the second eye of the user;
      provide adjusted information by removing part of the information to replace first information from a first area of the first images with a first static image in the

US 10,528,129 B2

13

first area, and second information from a second area of the second images with a second static image in the second area;

display the adjusted information including first images with the first area replaced with the first static image and the second images with the second area replaced with the second static image on the immersive display, to provide static images corresponding to at least one of a nose or cheeks as a remainder of the information displayed in the first images and the second images changes.

13. The immersive display according to claim 12, comprising at least one external camera and wherein the information is obtained utilizing the at least one external camera.

14. The immersive display according to claim 12, comprising a communication system and wherein the information is obtained from a server.

15. The immersive display according to claim 12, wherein the first static image comprises a first nose image and a second static image comprises a second nose image.

14

16. The immersive display according to claim 12, wherein the first static image and the second static image are displayed at a lower resolution than the remainder of the first images and the second images.

17. The immersive display according to claim 12, wherein the first static image and the second static image are displayed at a lower refresh rate than the remainder of the first images and the second images.

18. The immersive display according to claim 12, wherein the body is configured to receive an insert to obstruct the first area and to obstruct the second area.

19. The immersive display according to claim 12, wherein the first display is shaped to occlude the first area to simulate occlusion of the first area by a facial feature and the second display is shaped to occlude the second area to simulate occlusion of the first area by the facial feature.

* * * * *

# EXHIBIT B

US009977495B2

(12) **United States Patent**
Shuster et al.

(10) **Patent No.:** **US 9,977,495 B2**
(45) **Date of Patent:** **May 22, 2018**

(54) **IMMERSIVE DISPLAYS**

(71) Applicant: **UTHERVERSE DIGITAL INC.**, Vancouver (CA)

(72) Inventors: **Brian Shuster**, Vancouver (CA); **Gary Stephen Shuster**, Fresno, CA (US)

(73) Assignee: **Utherverse Digital Inc.**, Vancouver (CA)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days. days.

(21) Appl. No.: **14/677,519**

(22) Filed: **Apr. 2, 2015**

(65) **Prior Publication Data**

US 2016/0086378 A1      Mar. 24, 2016

**Related U.S. Application Data**

(60) Provisional application No. 62/052,975, filed on Sep. 19, 2014.

(51) **Int. Cl.**
*G06F 3/01*          (2006.01)
*G02B 27/01*         (2006.01)

(52) **U.S. Cl.**
CPC .............. *G06F 3/013* (2013.01); *G06F 3/011* (2013.01); *G06F 3/012* (2013.01); *G02B 2027/0141* (2013.01)

(58) **Field of Classification Search**
CPC ........ G06K 9/4604; G06T 2207/10016; G06T 3/40; A61B 3/0025; G02B 2027/0141; G02B 27/00; G06F 3/012; H04N 19/597; H04N 9/3194; H04N 5/2354; G03B 21/00; G03B 21/562

USPC ........................................................ 345/633
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 9,214,052 B2 * | 12/2015 | Knee | .......................... | G07F 9/10 |
| 2005/0234333 A1 * | 10/2005 | Takemoto | ............ | G02B 27/017 600/426 |
| 2008/0063384 A1 * | 3/2008 | Tanaka | ................... | B41J 3/4071 386/239 |
| 2013/0250382 A1 * | 9/2013 | Wiltshire | ................. | G03H 1/24 359/23 |
| 2014/0285428 A1 * | 9/2014 | Holz | ........................ | G06F 3/017 345/156 |
| 2015/0015666 A1 * | 1/2015 | Kwon | ................ | H04N 13/0018 348/43 |
| 2015/0078621 A1 * | 3/2015 | Choi | ........................ | G09G 5/14 382/103 |
| 2015/0154783 A1 * | 6/2015 | Grundhofer | ......... | H04N 5/7458 348/745 |

(Continued)

*Primary Examiner* — Gregory J Tryder
*Assistant Examiner* — Kwang Lee
(74) *Attorney, Agent, or Firm* — Borden Ladner Gervais LLP; Geoffrey DeKleine

(57)          **ABSTRACT**

A method of providing information for display on a display of an immersive display. The method includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, excluding part of the information to yield adjusted information to occlude or replace first information from a first area of the first image and second information from a second area of a second image when displayed on the immersive display, and providing the adjusted information for displaying the first image absent the first area and the second image absent the second area on the immersive display.

**6 Claims, 3 Drawing Sheets**



**US 9,977,495 B2**

Page 2

(56)                    **References Cited**

U.S. PATENT DOCUMENTS

2015/0294504 A1* 10/2015 Daon ...................... G06T 19/00
                                                345/633

* cited by examiner



FIG. 1



FIG. 2



FIG. 3

FIG. 4

US 9,977,495 B2

**1**

## IMMERSIVE DISPLAYS

### FIELD OF TECHNOLOGY

The present disclosure relates to immersive displays such as three-dimensional (3D) displays for displaying virtual or augmented reality environments.

### BACKGROUND

Immersive displays are becoming increasingly popular for the purpose of playing games in a virtual reality environment. These immersive displays may also be utilized for applications other than gaming, including, for example, augmented reality applications. The virtual world or augmented-reality is currently commonly perceived by the user based on two images, with each of the two images displayed close to a respective one of the user's eyes.

Such displays are often head-mounted and in many cases block out some or all of the real environment around the user in order to immerse the user, for example, in the virtual world. Thus, these displays may obstruct or block the user's vision of his or her surroundings. The virtual world or augmented-reality is perceived by the user based on images displayed very close to the user's eyes.

Improvements in immersive displays and applications or uses of such immersive displays are desirable.

### SUMMARY

According to one aspect, a method of providing information for display on an immersive display is provided. The method includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, excluding part of the information to yield adjusted information to occlude or replace first information from a first area of the first image and second information from a second area of a second image when displayed on the immersive display, and providing the adjusted information for displaying the first image absent the first area and the second image absent the second area on the immersive display.

According to another aspect, a method of providing information for display on a display of an immersive display includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, identifying a first area of the first image and a second area of the first image and identifying a third area of the second image and a fourth area of the second image, and displaying the first area of the first image and the third area of the second image utilizing first display attributes and displaying the second area of the first image and the fourth area of the second image utilizing second display attributes, wherein the second display attributes differ from the first display attributes.

### BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the present disclosure will now be described, by way of example only, with reference to the attached Figures, in which:

FIG. **1** is a system for providing a multi-user virtual event;

FIG. **2** is a simplified block diagram of an example of an immersive display of the system of FIG. **1**;

FIG. **3** is a flowchart illustrating an example of a method of providing information for display on an immersive display;

**2**

FIG. **4** is a flowchart illustrating an example of another method of providing information for display on an immersive display.

### DETAILED DESCRIPTION

For simplicity and clarity of illustration, reference numerals may be repeated among the figures to indicate corresponding or analogous elements. Numerous details are set forth to provide an understanding of the examples described herein. The examples may be practiced without these details. In other instances, well-known methods, procedures, and components are not described in detail to avoid obscuring the examples described. The description is not to be considered as limited to the scope of the examples described herein.

Because the display or displays of an immersive display may be very close to the user's eyes when the immersive display is worn by the user, the displays may render images and video in stereoscopic 3D to areas of the eyes that normally are presented with static non-stereoscopic 3D imagery, such as that part of a person's vision that normally sees the person's nose in one eye, and only monocular vision of the environment in that part of their field of view from the other eye. Presentation of stereoscopic 3D in areas not accustomed to seeing such imagery will very often cause motion sickness for the user wearing the display. Similarly, lack of the point of reference, which is removed when the nose and other normally static imagery that a person is accustomed to seeing in each separate eye is replaced with imagery from an immersive display, often causes the wearer to feel disoriented and also contributes to motion sickness. Additionally, a very high resolution, or large number of pixels, and a very high refresh rate is desirable in order to display images with sufficient clarity for virtual or augmented reality. Such high resolution and high refresh rate increases the demands on device resources such as processing power, memory, and bandwidth to transfer information to the immersive display.

The following describes an immersive display and a method of operating the immersive display. The method includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, excluding part of the information to yield adjusted information to occlude or replace first information from a first area of the first image and second information from a second area of a second image when displayed on the immersive display, and providing the adjusted information for displaying the first image absent the first area or in which a static image is displayed and the second image absent the second area or in which a static image is displayed on the immersive display. Thus, the display may replace the information for display in the first area with a static image to simulate, for example, a nose. Similarly, the display may replace the information for display in the second area with a static image to simulate, for example, a nose.

The following also describes a method of providing information for display on a display of an immersive display that includes obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display, identifying a first area of the first image and a second area of the first image and identifying a third area of the second image and a fourth area of the second image, and displaying the first area of the first image and the third area of the second image utilizing first display attributes and displaying the

US 9,977,495 B2

**3**

second area of the first image and the fourth area of the second image utilizing second display attributes. The second display attributes differ from the first display attributes.

A system **100** for providing information for display on an immersive display is illustrated in FIG. **1**. The system includes servers **102** that are coupled to a network **104** or networks, which includes the internet and may optionally include a cellular network through which several client devices, nodes, or terminals may be connected. In the example of FIG. **1**, five client devices are coupled to the network **104**, including desktop computers **106**, **108**, **110**, a laptop computer **112** which is coupled to the network wirelessly through a modem **114**, and a smartphone **116**. The servers **102** store and execute software or firmware and communicate and cooperate with software and firmware on the client devices **106**, **108**, **110**, **112**, **116** via the network. The software and firmware on the client devices **106**, **108**, **110**, **112**, **116** also communicate and cooperate with software and firmware on respective immersive displays that may be worn by the users.

The servers **102**, utilizing the software or firmware, provide the virtual environment, which may be a three-dimensional virtual environment. The environment may be any suitable environment for a game, a social network or interaction site, a meeting environment, such as a boardroom or meeting room, a classroom, a conference room or any other room or other scene. The virtual environment provided is dependent on the application and may be dependent on any other suitable factor such as the number of participants.

The servers **102** also manage authorization of users via client devices to facilitate participation in the virtual environment by avatars representing the users. The avatars enter the virtual environment to take part in or attend an event such as a game, a social network event or interaction, a meeting, class, conference or other event.

The images, including the environment, may be provided to the client devices **106**, **108**, **110**, **112**, **116** for display utilizing the immersive displays, which may be, for example, head-mounted displays worn by the users.

A simplified block diagram of an example of an immersive display **200** is shown in FIG. **2**. The immersive display **200** includes multiple components, such as a main processor **202** that controls the overall operation of the immersive display **200**.

The main processor **202** interacts with other components of the immersive display **200**, including, for example, a temporary storage device **204**, a memory **206**, a display device **208**, a speaker **210**, an auxiliary input/output (I/O) subsystem **212**, external cameras **214**, one or more internal cameras **216**, one or more microphones **218**, an orientation/movement sensor **220**, one or more proximity sensors **222**, a communication subsystem **224**, short-range communications **226**, a power source **228**, and, optionally, other subsystems **230**.

The temporary storage device **204** may be, for example, Random Access Memory (RAM) that stores data that is processed by the main processor **202**. The memory **204**, such as flash memory, is utilized for persistent storage.

The immersive display **200** provides video output through the display **208**, which includes an interface, a controller and a pair of displays to display images. The images displayed include a respective image in front of each one of the user's eyes such that a right side image is displayed in front of a user's right eye and a left side image is displayed in front of a user's left eye. In addition to the display **208**, output is provided via the speaker **210** or other audio output such as headphones or earphones. The auxiliary input/output (I/O)

**4**

subsystem **212** includes an interface through which, for example, a USB controller or other peripheral device may be connected.

Input to the immersive display may be provided via external sensors or input devices such as the external cameras **214** mounted on the body of the immersive display **200**. The external cameras **214** may include multiple cameras to obtain images extending around the user, i.e., 360° around the user. The external cameras **214** may also include cameras to obtain images in an upward direction from the user, and in a downward direction from the user. Each of the cameras includes the functional components for operation of the camera, including the lens, the image sensor, and, optionally, a light sensor and light source, such as infrared light emitting diodes (LEDs). Thus, the cameras provide images of the user's environment or surroundings. The cameras may be one or more of visual light cameras, 3D sensing cameras, light field cameras, forward looking infrared cameras, near infrared cameras, ultraviolet cameras, or other imaging devices.

The terms upward and downward are utilized herein to generally describe direction of view of the external cameras **214** relative to the user when the immersive display is worn by the user and the user is in an upright position, and such terms are not otherwise limiting.

The one or more internal cameras **216**, referred to herein as the internal camera **216**, may be mounted on an inside of the body of the immersive display and includes the functional components for operation of each internal camera, including the lens, the image sensor, and a light source, which may be a light source in the non-visible spectrum, such as infrared LEDs. Although the interior of the immersive display **200** may be dark because exterior light is blocked out or partially blocked out, the light source provides sufficient light for use of the internal camera **216**.

The one or more microphones, referred to herein as the microphone **218**, may also be mounted in the body of the immersive display **200** to provide input by converting audible information to electrical signals, which may be processed by the main processor **202** and may be transmitted to another electronic device to which the immersive display **200** is coupled. For example, the immersive display may be coupled to a smart-phone, a laptop computer, a tablet, a desktop computer, a game device, and any other suitable electronic device.

The main processor **202** also receives signals from the orientation/movement sensor **220**, which is coupled to the body of the immersive display **200**. The orientation/movement sensor may be, for example, an accelerometer, a gyro sensor, or any other suitable sensor or combination of sensors that is or are utilized to detect direction of movement, direction of gravitational forces, and reaction forces so as to determine, for example, the orientation of the immersive display **200** and the movement of the immersive display **200**.

The one or more proximity sensors, referred to herein as the proximity sensors **222**, may provide additional input to the main processor **202** to detect the presence of objects that are near or proximal to the sensor and thus to the user when the immersive display **200** is in use. The proximity sensors **222** may be any suitable proximity sensors such as a capacitive or photoelectric proximity sensor.

The communication subsystem **224** receives signals from another electronic device such as the client devices **106**, **108**, **110**, **112**, **116** shown in FIG. **1**, and sends signals to the other electronic device to which the immersive display is coupled. Thus, for example, the signals from the microphone **218** or

US 9,977,495 B2

5

signals from the external cameras 216 or from the internal camera 216 may be sent via the communication subsystem 224. The communication subsystem 224 is also responsible for receiving signals from the other electronic device for processing by the main processor 202 to cause images, which may include video, to be displayed on the display 208 and for audio to be output through the speaker 210.

The immersive display 200 optionally includes short-range communications 226 to perform various communication functions. For example, the immersive display 200 may include Bluetooth or infrared (IR) communications capability, for example, for communicating with a peripheral device or accessory.

The power source 228 may be one or more rechargeable batteries or a port to an external power supply to power the immersive display 200.

The systems and subsystems that interact with the main processor 202 and are described herein are provided as examples only. Other subsystems 230 may also interact with the main processor 202.

Utilizing the images from the internal camera 216, the main processor 202 may be operable to track eye motion. To track eye motion, the user's pupils may be tracked when the immersive display 200 is in use. The eye motion tracking may also facilitate determination of what a user is looking at, for example, by triangulation to determine depth of an object or image that a user is looking at. Alternatively, the internal camera 216 may identify or track changes in muscles or muscle motion around at least one of the user's eyes to identify movement of the eye, or may track changes in shape of a lens of an eye or changes in shape of the lens of each eye to identify a focal distance, facilitating identification of the depth of focus of a user.

In one aspect, variable focal optical elements, such as the SuperFocus™ glasses may be utilized and controlled digitally to create a more realistic blur effect. Areas that are set to be blurred may be rendered with fewer pixels.

Based on the eye motion tracking, the direction that the user is looking may be identified. The direction may be, for example, an angle or angles, such as angular offset or offsets from straight ahead. Thus, when a user glances upwardly, downwardly, or to either side, the direction is identified and the images displayed utilizing the display 208 may be changed or adjusted based on the direction.

The main processor 202 is also operable to analyze the images from the internal camera to track or identify a change in facial expression. For example, the main processor 202 may utilize primary facial feature tracking by tracking features such as lips, nose, and eyes. Alternatively, or in addition, movement of parts of the face may be tracked. The main processor 202 may transmit facial expression data or an identification of the expression to the other electronic device to which the immersive display 200 is coupled via the communication subsystem 222.

The main processor 202 is also operable to receive the image data from the external cameras and to transmit the data to the other electronic device, along with metadata for at least key frames for identifying the image data such that the images can be stitched together to provide images of the user's surroundings. Thus, the images from each of the cameras can be stitched together to obtain images of the user's entire surroundings.

When viewing images without using the immersive display 200, a user's nose typically occludes part of the real space that is viewed. In other words, part of the real space cannot be seen without adjusting the direction or position of the head because the user's nose is in the line of sight or in the line of the peripheral vision. In virtual reality or augmented reality viewed through the immersive display, corresponding areas may be occluded from display. Areas that would correspond to a user's nose are not displayed to increase the user's perception that the virtual or augmented reality space is real. Thus, no image is displayed in the areas that would correspond to the location of a user's nose or a static image may be displayed. By providing no image or a static image in such areas, a stable reference is provided in the user's line of sight and the chance of experiencing motion sickness or the severity of the motion sickness experienced while wearing the immersive display 200 may be reduced.

In addition, because the display 208 of the immersive display 200 is very close to the user's eyes when the immersive display 200 is worn by the user, a very high resolution, or large number of pixels, and a very high refresh rate is desirable in order to display images with sufficient clarity for virtual or augmented reality. Such high resolution and high refresh rate utilizes more processing power. Replacing parts of the images with static images to simulate a nose reduces the number of pixels for which information is processed for display, thus reducing one or more of processing requirements, memory requirements, and bandwidth utilized to transfer information to the immersive display.

A flowchart illustrating a method of providing information for display on a display of an immersive display is shown in FIG. 3. The method may be carried out by software executed, for example, by one or more of the servers 102, by one or more of the client devices 106, 108, 110, 112, 116, by the main processor 202 of the immersive display 200, or by a combination of these devices. Coding of software for carrying out such a method is within the scope of a person of ordinary skill in the art given the present description. The method may contain additional or fewer processes than shown and/or described, and may be performed in a different order. Computer-readable code executable by at least one processor to perform the method may be stored in a computer-readable medium, such as a non-transitory computer-readable medium.

Information is obtained for displaying on the display 208 of the immersive display 200 at 302. The information includes information for displaying a right side image in front of a right eye and a left side image in front of a left eye of a user of the immersive display 200 to provide a virtual 3-D image for the user. The information may be information from an application and is utilized to display a scene from a game, a social network or interaction site, a meeting environment, such as a boardroom or meeting room, a classroom, a conference room or any other room or other scene.

Parts of the information are identified for exclusion from the information or for replacement with a static image at 304. The parts of the information that are identified correspond to a first area of the right side image and a second area of the left side image. The first area and the second area correspond to areas at which a user's nose would occlude the field of vision in real space. Thus, the first area is at a left side of the right side image and the second area is at a right side of the left side image.

Other parts of the information that correspond to other areas may also be identified for exclusion or for replacement with static images. For example, in addition to the areas that correspond to the user's nose, other areas that correspond to typical locations of cheekbones or eye sockets or both may be occluded from the field of vision. The information that

US 9,977,495 B2

7

corresponds to these areas of each of the right side image and the left side image may also be identified for exclusion, which may further increase the perception that the virtual reality space or augmented reality space is real.

The parts of the information are removed from the information obtained to yield adjusted information at **306**. The adjusted information includes less information or data than the information obtained at **302**, prior to removing the identified information. Alternatively, the parts of the information are replaced with static images to simulate a user's nose. The static images may be displayed at a lower resolution and may be displayed at a slower refresh rate.

The adjusted information is then provided at **308** for displaying the first image without the first area and the second image without the second area, corresponding to the areas at which the user's nose is present. The static images may be displayed in the first area and the second area.

The method illustrated in FIG. **3** is continuous such that the images are continuously updated on the display **208** of the immersive display **200** to display or play virtual reality or augmented reality video on the immersive display **200**.

By providing no image or a static image in the areas that correspond to the nose or other occluded areas, the amount of information that is required for displaying images on the display **208** is reduced. The amount of information required for rendering is reduced. Thus, the area of the display **208** on which information is rendered is reduced. The display **208** may also or alternatively be reduced in size, such that the display **208** does not extend to those areas at which information is not rendered. Alternatively, the display resolution may be reduced for such areas, for example, for rendering a static image. In one example, the amount of information transmitted from the one or more servers **102** may be reduced.

As indicated above, the method illustrated in FIG. **3** and described above may be carried out by software executed, for example, by one or more of the servers **102**, by one or more of the client devices **106**, **108**, **110**, **112**, **116**, by the main processor **202** of the immersive display **200**, or by a combination of these devices.

Optionally, the static image that is displayed on occluded areas of the display may be customizable or configurable by the user. For example, the static image may be configured by the user to configure attributes of the image, such as size, shape, and skin tone of the static image, to simulate the user's nose. For example, such configuring may be carried out by selection of options from a menu or utilizing any other suitable method.

According to one example, the method is carried out at one or more of the servers **102** such that the server obtains the information from an application executed at the one or more servers **102** at **302**. The one or more servers **102** also identifies the parts of the information for exclusion, including the first area of the right side image and the second area of the left side image at **304** and the one or more servers **102** removes the information at **306** to yield adjusted information that excludes the identified information. The adjusted information is provided by the one or more servers **102** at **308**, to the immersive display **200** by sending the adjusted information to the immersive display **200**, via the respective client device.

According to another example, the method is carried out at the client device **106**, **108**, **110**, **112**, **116**. In this example, the client device obtains the information from the one or more servers **102** or from the immersive display **200**, for example, from images captured utilizing the external camera or cameras **216** of the immersive display **200** at **302**. The

8

client device **106**, **108**, **110**, **112**, **116** identifies the parts of the information for exclusion, including the first area of the right side image and the second area of the left side image at **304** and the client device **106**, **108**, **110**, **112**, **116** removes the information at **306** to yield adjusted information that excludes the identified information. The adjusted information is provided by the client device **106**, **108**, **110**, **112**, **116**, to the immersive display **200** by sending the adjusted information to the immersive display **200** for displaying, on the display **208**, the right side image excluding at least the first area and the left side image excluding at least the second area.

According to yet another example, the method is carried out at the immersive display **200**. According to this example, the main processor **202** of the immersive display **200** obtains the information from the respective client device **106**, **108**, **110**, **112**, **116**, or from the one or more servers **102** via the respective client device **106**, **108**, **110**, **112**, **116**, or, for example, from images captured utilizing the external camera or cameras **216** of the immersive display **200** at **302**. The processor **202** identifies the parts of the information for exclusion, including the first area of the right side image and the second area of the left side image at **304** and the processor **102** removes the information at **306** to yield adjusted information that excludes the identified information. The adjusted information is provided by the processor **102**, to the display **208** of the immersive display **200** by sending the adjusted information to the immersive display **200** for displaying the right side image excluding at least the first area and the left side image excluding at least the second area.

As described above, the images displayed, utilizing the pair of displays, include a respective image in front of each one of the user's eyes such that a right side image is displayed in front of a user's right eye and a left side image is displayed in front of a user's left eye. Rather than utilizing generally symmetrical circular, rectangular or simple geometric shaped displays designed to maximize display of potentially viewable areas to all areas of each eye of the user, the immersive display may be constructed with displays that are shaped to only display environmental imagery to those areas of each eye that typically see such imagery in the normal course of use. For example, each display may be generally circular with the exception of a notch or area corresponding to a user's nose. Thus, each display is shaped to occlude an area to correspond with the user's nose. The displays may also be shaped to occlude areas corresponding to other facial features such as eye sockets and cheekbones.

Such shaped displays may be advantageous because areas of images are occluded by the shape of each display rather than by software, reducing processing time. Additionally, by reducing the total area of each display compared to a geometrically simple display, the total number of pixels of the display may be reduced compared to a circular display, for example, while still displaying images at the same very high resolution.

Optionally, an obstruction may be inserted into the body to cooperate with the body to simulate the nose. The obstruction may cooperate with the body of the immersive display **200** such that the obstruction is mechanically retained in the immersive display.

According to another alternative, the body of the immersive display **200** may be configured to receive obstructions to occlude areas of the display. In this example, a first obstruction is insertable into the body to cooperate with the body to occlude a first area of the first image and a second obstruction is insertable into the body to cooperate with the

US 9,977,495 B2

9

body to occlude a second area of the second image. The first obstruction and the second obstruction are sized and shaped to simulate a user's nose when inserted into the display to occlude the areas of the display.

A flowchart illustrating another method of providing information for display on a display of an immersive display is shown in FIG. 4. The method may be carried out by software executed, for example, by the one or more of the client devices 106, 108, 110, 112, 116, or by the main processor 202 of the immersive display 200, or by a combination of these devices. Coding of software for carrying out such a method is within the scope of a person of ordinary skill in the art given the present description. The method may contain additional or fewer processes than shown and/or described, and may be performed in a different order. Computer-readable code executable by at least one processor to perform the method may be stored in a computer-readable medium, such as a non-transitory computer-readable medium.

When viewing images utilizing the immersive display 200, a high definition image in the center of the field of view of the user provides a sharper and more realistic image for an improved experience or more realistic experience than a lower definition image. Peripheral areas of vision, however, may be rendered at lower definition or slightly out of focus. In fact, corrective lens eyeglasses generally correct for vision in an area centered on the field of view, for example, in a circle directly in front of the eye. Outside of this area, the eyeglasses may not correct for vision or correction may be reduced such that the areas outside the center of the field of view are out of focus or blurred for the user. Similarly, sunglasses generally reduce the amount of sunlight coming into an area in front of each eye of the user. However, the sunlight may still enter the eye from other areas in the user's peripheral vision, around the sunglasses and thus, these other areas may appear overexposed. Thus, information outside of the area at the center of the field of view, also referred to as the peripheral area, may be displayed at a lower resolution than the information in the area at the center of the field of view, or at a lower refresh rate.

Information is obtained for displaying on the display 208 of the immersive display 200 at 402. The information includes information or data that is utilized by the display 208 to display the images. The information includes information for displaying the right side image in front of a right eye and the left side image in front of a left eye of a user of the immersive display 200 to provide a virtual 3-D image for the user. The information may be information from an application and is utilized to display a scene from a game, a social network or interaction site, a meeting environment, such as a boardroom or meeting room, a classroom, a conference room or any other room or other scene.

Parts of the information utilized to display the images are identified at 404 for displaying different areas at different resolution. Part of the information utilized for displaying the right side image is identified for displaying a peripheral area of the image at a lower resolution compared to the remainder of the image. Part of the information utilized for displaying the right side image is identified for displaying a peripheral area of the image at a lower resolution compared to the remainder of the image. For example, information utilized to display any area that is outside a circular or elliptical area at the center of the field of vision may be identified as the peripheral area. Information utilized to display the peripheral area of the right side image and information utilized to display the peripheral area of the left side image may be identified.

10

To identify the part of the information utilized to display the areas of the image that are outside the area at the center of the field of view, the information utilized to display the area of the image at the center of the field of view in each of the right side image and the left side image may alternatively be identified, thus distinguishing between the information utilized to display the area of the image that is at the center of the field of view and the information that is utilized to display the areas that are outside the center of the field of view.

Optionally, the images from the internal camera 216 of the immersive display 200 may be utilized by the main processor 202 to track one or each of the user's pupils to identify the direction that the user is looking. The field of view may be identified based on the direction that the user is looking. For example, for each of the right side image and the left side image, an area at the center of a field of view may be identified by a circular or elliptical area centered on the direction that the user is looking. The information that is utilized to display the area at the center of the field of view is identified, thus distinguishing between the information utilized to display the area of the image that is at the center of the field of view and the information that is utilized to display the areas that are outside the area at the center of the field of view.

Alternatively or additionally, the internal camera 216 may identify or track changes in muscles or muscle motion around at least one of the user's eyes to identify movement of the eye, or may track changes in shape of a lens of an eye or changes in shape of the lens of each eye to identify a focal distance, facilitating identification of direction and depth of focus of a user. The center of the field of view of each of the right side image and the left side image may be based on such tracking and the size of the area that is identified as the center of the field of view may also vary based on such tracking. For example, a smaller center of the field of view may be identified when the depth of focus is greater as a user is viewing an object perceived to be a greater distance away.

According to an alternative embodiment, information that is utilized to display the area at the center of the field of view may be obtained and the information utilized to display parts of the image in the peripheral area may be created. For example, the information utilized to display the pixels in the peripheral area around the area at the center of the field of view may be created at the respective client device or at the immersive display 200. The information may be created based on attributes of the displayed image in the area at the center of the field of view. Thus, the information to display the area at the center of the field of view is received at the respective client device and immersive display 200 and the information to display the peripheral area is created.

Information is provided to the display 208 of the immersive display 200 for displaying different areas utilizing different attributes at 406. For example, the right side image and the left side image are provided to the display 208 for displaying at 406. The area of the right side image that is at the center of the field of view is displayed utilizing first display attributes. The peripheral area of the right side image, outside the area at the center of the field of view, is displayed utilizing second display attributes. Similarly, the area of the left side image that is at the center of the field of view is displayed utilizing first display attributes and the peripheral area of the left side image, outside the center of the field of view, is displayed utilizing a second display attribute.

For example, the areas outside each area at the center of the field of view in each of the left side image and the right

US 9,977,495 B2

**11**

side image may be displayed at a lower resolution and with a lower refresh rate than each respective area at the centers of the field of view.

A plurality of parts of the information may be identified at **404** for each image. For example, information to display the area at the center of the field of vision may be identified. Information to display an intermediate area surrounding the area at the center of the field of vision may be identified and information to display an outer peripheral area may be identified. The information may be identified to display the area at the center of the field of vision at the highest resolution while displaying the intermediate area at a relatively lower, intermediate resolution, and displaying the outer peripheral area at a resolution that is lower than the intermediate area. In this example, three areas are identified in each of the right side image and the left side image and each of the areas are displayed utilizing different attributes. Other areas may be identified for displaying utilizing different attributes.

The method illustrated in FIG. **4** is continuous such that the images are continuously updated on the display **208** of the immersive display **200** to display or play virtual reality or augmented reality video on the immersive display **200**.

In addition or alternatively, the immersive display **200** may include adjustable corrective lenses positioned to be located in front of the user's eyes when the immersive display is worn by a user. The adjustable corrective lenses are utilized to adjustably correct the user's vision while the areas of the images that fall outside the lenses remain unadjusted and therefore blurred to the user who would otherwise wear corrective lens eyeglasses.

In one aspect, where resolution, processing power, and/or other elements are insufficient to render a full field, simulated obstructive objects may be placed in the field. For example, in a concert, a person sitting in front of the user may don a large virtual "hat" to obstruct the user's view and reduce the area of the display for which the image must be rendered.

The described embodiments are to be considered as illustrative and not restrictive. The scope of the claims should not be limited by the preferred embodiments set forth in the examples, but should be given the broadest interpretation consistent with the description as a whole. All changes that come with meaning and range of equivalency of the claims are to be embraced within their scope.

What is claimed is:

1. A method of providing information for display on a display of an immersive display, the method comprising:
obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display;
removing part of the information to yield adjusted information to remove or replace first information from a

**12**

first area of the first image and second information from a second area of a second image when displayed on the immersive display;
providing the adjusted information for displaying the first image with the first area removed and the second image with the second area removed on the immersive display,
wherein removing part of the information comprises displaying a first static image in the first area of the first image and displaying a second static image in the second area of the second image,
wherein the first static image comprises a first nose image and a second static image comprises a second nose image.

2. The method according to claim **1**, wherein the first nose image and the second nose image are displayed at a lower resolution than the first image and the second image.

3. The method according to claim **2**, wherein the first nose image and the second nose image are displayed at a lower refresh rate than the first image and the second image.

4. An immersive display comprising:
a body;
at least one display on the inside of the body for displaying a first image in front of a first eye and a second image in front of a second eye of a user;
a processor coupled to the display and operable to:
obtain information utilized for displaying the first image and the second image;
remove part of the information to remove or replace first information from a first area of the first image and second information from a second area of a second image when displayed on the immersive display;
display the first image with the first area removed and the second image with the second area removed on the display,
wherein the processor is configured to display a first static image in the first area and display a second static image in the second area,
wherein the first static image comprises a first nose image and a second static image comprises a second nose image.

5. The immersive display according to claim **4**, wherein the first nose image and the second nose image are displayed at a lower resolution than the first image and the second image.

6. The immersive display according to claim **5**, wherein the first nose image and the second nose image are displayed at a lower refresh rate than the first image and the second image.

*     *     *     *     *

# EXHIBIT C

**Pre-Suit Correspondence**

**Date:** May 13, 2026 11:24 a.m. (Pacific)
**From:** Utherverse Legal <legal@utherverse.com> (Gary Shuster, Esq.)
**To:** yves.guillemot@ubisoft.com
**Cc:** infomtl@ubisoft.com
**Subject:** Discussion Regarding Licensing of Virtual Nose / Virtual Beak Patents for VR Motion Sickness Reduction

Dear Ubisoft Legal Department,

I am writing on behalf of the inventors and owners of a family of U.S. patents covering the use of a virtual nose (or similar fixed visual reference) to reduce motion sickness in virtual reality environments. The patents include:

  • US 9,977,495

  • US 10,528,129

  • US 11,455,032

These patents are supported by well-established research showing that a stable visual anchor in the lower field of view significantly improves user comfort in VR.

We are aware that Ubisoft has implemented a virtual beak in Eagle Flight (2016) and, more recently, a virtual nose option in Assassin's Creed Nexus VR. We believe there is a strong mutual interest in exploring a licensing or acquisition arrangement. We have not evaluated litigation pathways, and this communication does not accuse you of infringement or threaten litigation.

We are approaching this matter constructively and would welcome the opportunity to discuss how these patents could provide Ubisoft with additional freedom-to-operate protection and defensive value across your current and future VR titles. We are open to both non-exclusive licensing arrangements and a potential full portfolio acquisition, depending on what best serves Ubisoft's strategic needs.

Would your team be available for a brief, confidential call or meeting in the coming weeks to explore this further? Please let me know a convenient time, or feel free to suggest next steps.

Thank you for your time and consideration. I look forward to your reply.

Best regards,

Gary Shuster, Esq.

Chief Innovation Strategist

Utherverse Digital, Inc.

**Original Message in raw format follows:**

MIME-Version: 1.0
Date: Wed, 13 May 2026 11:24:41 -0700
Message-ID:
<CABr7Txb6VtUjrEKH6AKxKzJJqeWzB=Oesy12peAQdUJo_CpFUg@mail.gmail.com>
Subject: Discussion Regarding Licensing of Virtual Nose / Virtual Beak Patents
 for VR Motion Sickness Reduction
From: Utherverse Legal <legal@utherverse.com>
To: yves.guillemot@ubisoft.com
Cc: infomtl@ubisoft.com
Content-Type: multipart/alternative; boundary="000000000000f4a5680651b717a4"

--000000000000f4a5680651b717a4
Content-Type: text/plain; charset="UTF-8"
Content-Transfer-Encoding: quoted-printable

Dear Ubisoft Legal Department,

I am writing on behalf of the inventors and owners of a family of U.S.
patents covering the use of a virtual nose (or similar fixed visual
reference) to reduce motion sickness in virtual reality environments. The
patents include:

  - US 9,977,495
  - US 10,528,129
  - US 11,455,032

These patents are supported by well-established research showing that a
stable visual anchor in the lower field of view significantly improves user
comfort in VR.

We are aware that Ubisoft has implemented a virtual beak in *Eagle Flight*
(2016) and, more recently, a virtual nose option in *Assassin=E2=80=99s Cre=
ed Nexus
VR*. We believe there is a strong mutual interest in exploring a licensing
or acquisition arrangement. We have not evaluated litigation pathways, and
this communication does not accuse you of infringement or threaten
litigation.

We are approaching this matter constructively and would welcome the
opportunity to discuss how these patents could provide Ubisoft with
additional freedom-to-operate protection and defensive value across your
current and future VR titles. We are open to both non-exclusive licensing
arrangements and a potential full portfolio acquisition, depending on what
best serves Ubisoft=E2=80=99s strategic needs.

Would your team be available for a brief, confidential call or meeting in the coming weeks to explore this further? Please let me know a convenient time, or feel free to suggest next steps.

Thank you for your time and consideration. I look forward to your reply.

Best regards,

*Gary Shuster, Esq.* Chief Innovation Strategist Utherverse Digital, Inc.

--000000000000f4a5680651b717a4
Content-Type: text/html; charset="UTF-8"
Content-Transfer-Encoding: quoted-printable

<div dir=3D"ltr"><p dir=3D"auto" style=3D"white-space:pre-wrap;color:rgb(0,=
0,0)">Dear Ubisoft Legal Department,</p><p dir=3D"auto" style=3D"white-spac=
e:pre-wrap;color:rgb(0,0,0)">I am writing on behalf of the inventors and ow=
ners of a family of U.S. patents covering the use of a virtual nose (or sim=
ilar fixed visual reference) to reduce motion sickness in virtual reality e=
nvironments. The patents include:</p><ul dir=3D"auto" style=3D"color:rgb(0,=
0,0)"><li style=3D"margin-left:15px">US 9,977,495</li><li style=3D"margin-l=
eft:15px">US 10,528,129</li><li style=3D"margin-left:15px">US 11,455,032</l=
i></ul><p dir=3D"auto" style=3D"white-space:pre-wrap;color:rgb(0,0,0)">Thes=
e patents are supported by well-established research showing that a stable =
visual anchor in the lower field of view significantly improves user comfor=
t in VR.</p><p dir=3D"auto" style=3D"white-space:pre-wrap;color:rgb(0,0,0)"=
>We are aware that Ubisoft <span class=3D"Asgive ng" style=3D"border-style:=
none;background:none">has </span>implemented a virtual beak in <em>Eagle Fl=
ight</em> (2016) and, more recently, a virtual nose option in <em>Assassin=
=E2=80=99s Creed Nexus VR</em>. We believe there is a strong mutual interes=
t in exploring a licensing or acquisition arrangement. We have not evaluate=
d litigation pathways, and this communication does not accuse you of infrin=
gement or threaten litigation. </p><p dir=3D"auto" style=3D"white-space:pre=
-wrap;color:rgb(0,0,0)">We are approaching this matter constructively and <=
span class=3D"Asgive ng" style=3D"border-style:none;background:none"><span =
class=3D"Asgive ng" style=3D"border-style:none;background:none">would </spa=
n></span>welcome the opportunity to discuss how these patents could provide=
 Ubisoft with additional freedom-to-operate protection and defensive value =
across your current and future VR titles. We are open to both non-exclusive=
 licensing arrangements and a potential full portfolio acquisition, dependi=
ng on what best serves Ubisoft=E2=80=99s strategic needs.</p><p dir=3D"auto=
" style=3D"white-space:pre-wrap;color:rgb(0,0,0)">Would your team be availa=
ble for a brief, confidential call or meeting in the coming weeks to explor=
e this further? Please let me know a convenient time, or feel free to sugge=
st next steps.</p><p dir=3D"auto" style=3D"white-space:pre-wrap;color:rgb(0=

,0,0)">Thank you for your time and consideration. I look forward to your re=
ply.</p><p dir=3D"auto" style=3D"white-space:pre-wrap;color:rgb(0,0,0)">Bes=
t regards,</p><p dir=3D"auto" style=3D"white-space:pre-wrap;color:rgb(0,0,0=
)"><strong>Gary Shuster, Esq.</strong>
Chief Innovation Strategist
Utherverse Digital, Inc.<br></p></div>

--000000000000f4a5680651b717a4--

# EXHIBIT D

## U.S. Patent No. 10,528,129 ("Immersive Displays")
### Claim 11 (non-transitory computer-readable medium) — Representative Claim

The following chart maps each limitation of claim 11 of the '129 Patent to the Accused Products. Claim 11 is charted as representative; claim 1 (method) recites the same operative steps performed by the Accused Products when executed, and claim 12 (immersive display) is additionally infringed by Defendants' own making and use of VR headsets loaded with and running the Accused Products during development, testing, quality assurance, and demonstration.

| Claim Limitation | Assassin's Creed Nexus VR (Literal Infringement) | Eagle Flight (Doctrine of Equivalents) |
|---|---|---|
| *[Preamble] A non-transitory computer-readable medium having stored thereon, computer-readable code executable by at least one processor of a computing device to:* | Assassin's Creed Nexus VR is distributed and installed as computer-readable game code stored on non-transitory media (the Meta Quest headset's storage and the distribution media/servers) and is executed by at least one processor of the computing device (the headset). It launched Nov. 16, 2023 for Meta Quest 2, Quest 3, and Quest Pro. | Eagle Flight is likewise distributed and installed as computer-readable game code stored on non-transitory media and executed by the headset/PC processor (Oculus Rift, PlayStation VR, HTC Vive; still sold in 2026). [Literal as to this limitation.] |
| *obtain information utilized for displaying first images in front of a first eye and second images in front of a second eye of a user of the immersive display;* | The Accused Nexus Product is a first-person, stereoscopic VR title that obtains and renders separate images to the user's left and right eyes on the headset display. | The Accused Eagle Flight Product is a first-person, stereoscopic VR title that obtains and renders separate images to the user's left and right eyes. [Literal.] |
| *provide adjusted information by removing part of the information to replace first information from a first area of the first images with a first static image in the first area, and second information from a second area of the second images with a second static image in the second area;* | When the "virtual nose" feature is enabled, the product replaces a defined area of each eye's image with a static virtual-nose image that occupies that region while the remainder of the scene continues to render. Ubisoft: "Recreating a virtual nose allows to put back this reference in the field of view of the players in VR and helps with comfort." | The product replaces a defined area of each eye's image with a static beak image. Palmieri: the beak "bring[s] back that simulated nose effect." [DOE: same function/way/result as replacing each eye-image area with a static nose reference.] |
| *display the adjusted information including first images with the first area replaced with the first static image and the second images with the second area replaced with the second static image on the immersive display, to provide static images corresponding to at least one of a nose or cheeks as a remainder of the information displayed in the first images and the second images changes.* | The static virtual nose persists in the user's field of view as a stable reference while the rest of the game world changes, and corresponds to a nose. Ubisoft expressly calls the feature a "virtual nose." | The static beak persists in the lower field of view as a stable reference while the rest of the world changes. Ubisoft added it because, in VR, "our eyes don't see the nose anymore." A beak is not literally a "nose or cheeks," so this limitation is met under the doctrine of equivalents. [The beak is a fusion of the nose and mouth; Utherverse reserves the right to claim the beak is a nose that directly infringes within the meaning of the claims]. |

Note re claim 1 (method) and claim 12 (immersive display): Claim 1 maps element-for-element to the same operations the Accused Products perform when executed (obtaining the left/right eye information; replacing a first/second image area with a static image; and displaying the result so that static images corresponding to a nose persist as the scene changes). Claim 12 (an immersive display comprising a body, display, and processor so configured) is infringed by Defendants' own making and use of VR headsets running the Accused Products.

**Supporting public sources:** Ubisoft launch announcement (news.ubisoft.com/.../assassins-creed-nexus-vr-launches-on-november-16, Sept. 22, 2023); Ubisoft "Assassin's Creed Nexus VR Accessibility Spotlight" (news.ubisoft.com/.../assassins-creed-nexus-vr-accessibility-spotlight, Nov. 10, 2023); O. Palmieri, "Game Design Deep Dive: Constant VR movement in Eagle Flight" (gamedeveloper.com, Feb. 6, 2017); Eagle Flight retail listings (store.steampowered.com/app/408250; meta.com Oculus store).

*This claim chart is preliminary, is based on Ubisoft's own public statements and the ordinary operation of the Accused Products, and is subject to amendment following discovery, including inspection of Defendants' source code and product builds. Element mappings designated "Literal" are subject to ordinary technical proof.*

# EXHIBIT E

**U.S. Patent No. 9,977,495 ("Immersive Displays")**
**Claim 1 (method)**

The following chart maps each limitation of claim 1 of the '495 Patent to the Accused Products. Claim 1 expressly requires that the first and second static images each comprise a nose image—language that maps directly and literally to Assassin's Creed Nexus VR's "virtual nose." Apparatus claim 4 (an immersive display so configured) is additionally infringed by Defendants' own making and/or use of VR headsets running the Accused Products.

| Claim Limitation | Assassin's Creed Nexus VR (Literal Infringement) | Eagle Flight (Doctrine of Equivalents) |
|---|---|---|
| *[Preamble] A method of providing information for display on a display of an immersive display, the method comprising:* | When executed, Assassin's Creed Nexus VR performs a method of providing information for display on the display of a Meta Quest immersive display. | When executed, Eagle Flight performs a method of providing information for display on the display of a VR immersive display. [Literal.] |
| *obtaining information utilized for displaying a first image in front of a first eye and a second image in front of a second eye of a user of the immersive display;* | The product obtains and renders separate first (left-eye) and second (right-eye) images for stereoscopic display on the headset. | The product obtains and renders separate left- and right-eye images for stereoscopic display. [Literal.] |
| *removing part of the information to yield adjusted information to remove or replace first information from a first area of the first image and second information from a second area of a second image when displayed on the immersive display;* | With the virtual-nose feature enabled, the product removes/replaces a defined area of the first image and a defined area of the second image to insert the static virtual nose. | The product removes/replaces a defined area of the first and second images to insert the static beak. [DOE.] |
| *providing the adjusted information for displaying the first image with the first area removed and the second image with the second area removed on the immersive display,* | The product displays each eye image with the corresponding area occupied by the static virtual-nose image while the remainder of the scene renders. | The product displays each eye image with the corresponding area occupied by the static beak image while the remainder renders. [DOE.] |
| *wherein removing part of the information comprises displaying a first static image in the first area of the first image and displaying a second static image in the second area of the second image,* | A static virtual-nose image is displayed in the first area of the first image and a static virtual-nose image is displayed in the second area of the second image. | A static beak image is displayed in the first area of the first image and in the second area of the second image. [DOE.] |
| *wherein the first static image comprises a first nose image and a second static image comprises a second nose image.* | The static images rendered to each eye are a virtual NOSE—Ubisoft expressly and repeatedly calls the feature a "virtual nose." [Literal—this is the strongest, most direct element-to-feature match on the public record.] | The static images rendered to each eye are a beak rather than a nose, so this limitation is met under the doctrine of equivalents: the beak performs substantially the same function (restoring the missing nose reference / "simulated nose effect"), in substantially the same way, to achieve substantially the same result (stabilization and comfort). |

**Supporting public sources:** Ubisoft "Assassin's Creed Nexus VR Accessibility Spotlight" (news.ubisoft.com, Nov. 10, 2023); Ubisoft launch announcement (news.ubisoft.com, Sept. 22, 2023); O. Palmieri, "Game Design Deep Dive: Constant VR movement in Eagle Flight" (gamedeveloper.com, Feb. 6, 2017).

*This claim chart is preliminary, is based on Ubisoft's own public statements and the ordinary operation of the Accused Products, and is subject to amendment following discovery, including inspection of Defendants' source code and product builds. Element mappings designated "Literal" are subject to ordinary technical proof.*

# EXHIBIT F

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT3354584

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| GARY J. BISAGA | 05/06/2015 |
| JEFFREY S. HUFFMAN | 05/06/2015 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| **Name:** | PEARSON EDUCATION, INC. |
| **Street Address:** | ONE LAKE STREET |
| **City:** | UPPER SADDLE RIVER |
| **State/Country:** | NEW JERSEY |
| **Postal Code:** | 07458 |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 14677519 |

**CORRESPONDENCE DATA**

**Fax Number:** (858)350-6111

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

**Phone:** 858-350-6100
**Email:** anguyen@kilpatricktownsend.com
**Correspondent Name:** KILPATRICK TOWNSEND & STOCKTOWN LLP
**Address Line 1:** 12730 HIGH BLUFF DR., SUITE 400
**Address Line 4:** SAN DIEGO, CALIFORNIA 92130

| ATTORNEY DOCKET NUMBER: | 56838-004110US-938990 |
|---|---|
| NAME OF SUBMITTER: | RICHARD B. CHRISTIANSEN, REG. NO. 69,493 |
| SIGNATURE: | /Richard B. Christiansen/ |
| DATE SIGNED: | 05/14/2015 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

**Total Attachments: 3**
source=56838-938990_Assignment_Declaration_BISAGA#page1.tif
source=56838-938990_Assignment_Declaration_HUFFMAN#page1.tif
source=56838-938990_Assignment_Declaration_HUFFMAN#page2.tif

Attorney Docket No.: 56838-938990 (004110US)

## COMBINED ASSIGNMENT AND DECLARATION OF PATENT APPLICATION

Title of Invention: Automated Content Injection

Application No.\_\_\_\_\_14/677,519\_\_\_\_\_, filed on \_\_March 24, 2015\_.

### ASSIGNMENT

WHEREAS, I, Gary J. Bisaga, residing in Leesburg, Virginia, am the original inventor or an original joint inventor of the invention disclosed in the above-identified application for a United States Letters Patent;

WHEREAS, Pearson Education, Inc., a corporation of the State of Delaware, having a principal place of business at One Lake Street Upper Saddle River, NJ 07458, hereinafter referred to as "Pearson Education," is desirous of acquiring an interest in the invention and application and in any United States Letters Patent and Registrations which may be granted on the same;

In consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, I, the inventor, have assigned, and by these presents do assign to Pearson Education all right, title, and interest in and to the invention and application and to all foreign counterparts (including patent, utility model, and industrial designs), and in and to any Letters Patent and Registrations which may hereafter be granted on any patent application claiming priority from the same in the United States and all countries throughout the world, and to claim the priority from the application as provided by the Paris Convention. The right, title, and interest is to be held and enjoyed by Pearson Education and Pearson Education's successors and assigns as fully and exclusively as it would have been held and enjoyed by me had this Assignment not been made, for the full term of any Letters Patent and Registrations which may be granted thereon, or of any division, renewal, continuation in whole or in part, substitution, conversion, reissue, prolongation, or extension thereof.

I further agree that I will, without charge to me, but at Pearson Education's expense, (a) cooperate with Pearson Education in the prosecution of U.S. Patent applications and foreign counterparts on the invention and any improvements, (b) execute, verify, acknowledge, and deliver all such further papers, including patent applications and instruments of transfer, and (c) perform such other acts as Pearson Education lawfully may request to obtain or maintain Letters Patent and Registrations for the invention and improvements in any and all countries, and to vest title thereto in Pearson Education, or Pearson Education's successors and assigns. I waive any obligation of Pearson Education to file foreign counterparts on the invention or continue pursuit of prosecution of the invention and application and to all foreign counterparts, and Pearson Education can in its sole discretion choose which countries to file foreign counterparts, unless I have previously informed Pearson Education in writing of any foreign counterparts I would like the option to pursue or prosecute.

I hereby authorize and request Kilpatrick Townsend & Stockton LLP, Two Embarcadero Center, Eighth Floor, San Francisco, CA 94111-3834, to insert herein above the application number and filing date of said application when known.

### DECLARATION

As the above named inventor, I hereby declare that:

- This declaration is directed to the application listed above and any applications related by priority that may include claims or claim elements supported in the application listed above.
- The above-identified application was made or authorized to be made by me.
- I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.
- I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than 5 years, or both.

IN TESTIMONY of both the Assignment and Declaration, I have signed my name on the date indicated.

Dated: 5/6/15

Gary J. Bisaga

**PATENT
REEL: 035644 FRAME: 0101**

Attorney Docket No.: 56838-938990 (004110US)

## COMBINED ASSIGNMENT AND DECLARATION OF PATENT APPLICATION

Title of Invention: Automated Content Injection

Application No. __14/677,519__, filed on __March 24, 2015__.

### ASSIGNMENT

WHEREAS, I, Jeffrey S. Huffman, residing in Folsom, California, am the original inventor or an original joint inventor of the invention disclosed in the above-identified application for a United States Letters Patent;

WHEREAS, Pearson Education, Inc., a corporation of the State of Delaware, having a principal place of business at One Lake Street Upper Saddle River, NJ 07458, hereinafter referred to as "Pearson Education," is desirous of acquiring an interest in the invention and application and in any United States Letters Patent and Registrations which may be granted on the same;

In consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, I, the inventor, have assigned, and by these presents do assign to Pearson Education all right, title, and interest in and to the invention and application and to all foreign counterparts (including patent, utility model, and industrial designs), and in and to any Letters Patent and Registrations which may hereafter be granted on any patent application claiming priority from the same in the United States and all countries throughout the world, and to claim the priority from the application as provided by the Paris Convention. The right, title, and interest is to be held and enjoyed by Pearson Education and Pearson Education's successors and assigns as fully and exclusively as it would have been held and enjoyed by me had this Assignment not been made, for the full term of any Letters Patent and Registrations which may be granted thereon, or of any division, renewal, continuation in whole or in part, substitution, conversion, reissue, prolongation, or extension thereof.

I further agree that I will, without charge to me, but at Pearson Education's expense, (a) cooperate with Pearson Education in the prosecution of U.S. Patent applications and foreign counterparts on the invention and any improvements, (b) execute, verify, acknowledge, and deliver all such further papers, including patent applications and instruments of transfer, and (c) perform such other acts as Pearson Education lawfully may request to obtain or maintain Letters Patent and Registrations for the invention and improvements in any and all countries, and to vest title thereto in Pearson Education, or Pearson Education's successors and assigns. I waive any obligation of Pearson Education to file foreign counterparts on the invention or continue pursuit of prosecution of the invention and application and to all foreign counterparts, and Pearson Education can in its sole discretion choose which countries to file foreign counterparts, unless I have previously informed Pearson Education in writing of any foreign counterparts I would like the option to pursue or prosecute.

I hereby authorize and request Kilpatrick Townsend & Stockton LLP, Two Embarcadero Center, Eighth Floor, San Francisco, CA 94111-3834, to insert herein above the application number and filing date of said application when known.

### DECLARATION

As the above named inventor, I hereby declare that:

- This declaration is directed to the application listed above and any applications related by priority that may include claims or claim elements supported in the application listed above.
- The above-identified application was made or authorized to be made by me.
- I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.
- I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than 5 years, or both.

67230714V.1

IN TESTIMONY of both the Assignment and Declaration, I have signed my name on the date indicated.

Dated: 6 May 2015

Jeffrey S. Huffman

67230714V.1

**PATENT**
**REEL: 035644 FRAME: 0103**

# EXHIBIT G

**Archive** ▸



# Assassin's Creed Nexus VR Accessibility Spotlight

November 10, 2023
Lucy O'Brien

Share: 🐦 📘 📋 in

Assassin's Creed Nexus VR is coming out exclusively for Meta Quest 2, Meta Quest Pro, and Meta Quest 3 on November 16, bringing the full Assassin experience to virtual reality. From the very beginning of development, the dev team's priority was to make Assassin's Creed Nexus VR as accessible to as many players as possible. Ubisoft News spoke with Game Director Olivier Palmieri about his team's approach to accessibility, 'virtual noses,' and what accessibility options players can expect once they put on the headset.

**VR typically has unique challenges when it comes to accessibility. How did you and your team address those challenges?**

**Olivier Palmieri:** From the start of the project, one of our priorities was to make Assassin's Creed Nexus VR accessible and comfortable to as many players as possible.

We defined three pillars for our accessibility features: motor, visual, and auditory. For example, we developed a feature called "Holster Assist" to allow the player to select weapons without having to physically reach above the shoulders. Another feature called "Auto-Parkour" allows for continuous parkour without having to hold down buttons and sticks. For visuals, there is an option to tune the brightness of the game up or down. For audio, we have subtitles, and we give the player the ability to switch the entire game to mono audio.



Finally, we also developed features to mitigate a potential fear of heights, with the option to display a grid at the user's feet to show where the player's real ground is. This grid can also appear as a three-dimensional cube around the player. Finally, during the Leap of Faith, or falls, a tunnel-vision effect comes into play to hide parts of the world, to mitigate the fear of jumping from up high into a haystack.

**Playing as an Assassin in VR evokes a lot of physicality. Are you able to play Assassin's Creed Nexus while seated? If so, how did you achieve this?**

**OP:** Yes, among the many features we developed for accessibility is a seated mode. This allows a player to fully play the game while seated. We then adapt several systems, such as the grabbing distance, for the experience to be adapted and equivalent to the standing mode in terms of gameplay and mechanics and difficulty, such as for combat, parkour, and stealth.

Locomotion modes such as "Teleport" also can be combined with seated mode to navigate the game world with ease and comfort.



**How did you approach the issue of motion sickness in Assassin's Creed Nexus?**

**OP:** One of the key aspects to enjoying virtual reality is to be comfortable and avoid motion sickness. So, it was crucial for us to make it a priority from the start of the game's development.

Based on continuous research on causes and solutions to motion discomfort, from our almost 10 years of experience developing VR, we implemented many features for Nexus VR to try to make it as comfortable to play as possible.

We have developed many features that can be combined or customized and regrouped in presets to make it simpler.

Examples of comfort features are "dynamic vignettes," which sense when there is motion in the player's field of view, and dynamically hide the peripheral vision, which is the most sensitive to motion in the human vision system.



Another comfort feature is the "virtual nose." When wearing a VR headset, users generally don't see their real nose anymore, as it's covered by the headset. This can be a bit disturbing for the brain, as our vision system is used to seeing our nose constantly in our field of view; you may see it appear in your field of view as you are reading, for example. Recreating a virtual nose allows to put back this reference in the field of

view of the players in VR and helps with comfort.

**What are you most proud of when it comes to accessibility in Assassin's Creed Nexus?**

Beyond the features that allow for more comfort with locomotion through the game's world, we developed a locomotion method called Teleport, which allows players to teleport from one location to another, removing potential remaining motion sickness.

It works by replacing motion through space with instantaneous teleportation from one point to another. We made it on par with standard locomotion in terms of game systems, rules and difficulty, but we also developed what we call the "Climb Teleport", which we believe is a first in VR, to allow players to climb anywhere, selecting the next opportunity and teleporting directly there.



ACCESSIBILITY FEATURES LIST

MOTOR

- **Controller Presets**– Select between four controller configurations to play the game.

- **Seated Mode** – Allows you to fully play the game while seated.

- **Auto-Parkour**– Allows automatic parkour without having to hold down buttons.

- **Holster Assist** – Allows you to grab weapons with limited required arms movement.

- **Hand Stabilization** – Helps stabilize motions of the hands.

- **Toggle Grip** – Allows toggle button behavior for grabbing and climbing, helping not to have to hold buttons for too long.

- **Haptics** – Allows toggling on/off haptic feedback.

- **Game difficulty** – Allows you to change the overall game's difficulty.

- **Combat difficulty** – Allows you to change the combat difficulty.

- **Stealth difficulty** – Allows you to change the stealth challenges difficulty.

- **Combat Visibility** – Provides additional visual feedback during combat.

- **Dominant Hand** – Defines player's dominant hand (left or right), switching weapon holsters side.

- **Grab to activate Claw** – Selects if grab action is necessary for the Climbing Claw, to prevent falling.

- **Turning Speed** – Change the joystick's rotation speed.

- **Hand point steering** – Use the joystick's orientation (instead of the player's head) to determine the movement direction.

AUDIO

- **Increase Speech intelligibility –** to increase dialogs clarity.

- **Highlight important gameplay sounds** – to make important gameplay sounds easier to hear.

- **Mono Mode** – for all audio to be sent to each ear.

- **Audio Balance** – to tune the balance of audio between the left and right ear.

- **Subtitles** – display subtitles for dialogs in game and during cinematics.

- **Subtitle Size** – change subtitle size.

- **Subtitle Background** – change subtitle background for better readability.

- **Speaker Name** – displays the names of the characters speaking before their lines.

**VISUAL**

- **Brightness** – Adjust the brightness of the game, to lower or higher than default.

- **Parkour Assistance** – display visual arcs and icons to help preview parkour paths.

- **Animus Grid** – display a 2D or 3D grid to help reduce fear of heights. Also activates a tunnel vision when falling or the leap of faith.

*Assassin's Creed Nexus VR will launch on November 16 for Meta Quest 2, Meta Quest Pro, and Meta Quest 3. For more on Assassin's Creed Nexus,* **check out its official website***.*

 
 UBISOFT

**DOWNLOAD UBISOFT CONNECT**

 ENGLISH ⌄

**PRIVACY**

**TERMS OF USE**

**NOTICE AT COLLECTION**

**REFUND POLICY**

**TERMS OF SALE**

**UBISOFT+ SUBSCRIPTION TERMS**

Interest-based Ads

Do Not Sell / Share My Personal Information

Limit Use / Disclosure of My Sensitive Personal Information

Set cookies

**WITHDRAW FROM CONTRACT**

**UBISOFT CONNECT**

**SUPPORT**

**ABOUT US**

**INVESTORS**

**PRESS**

**CAREERS**

**LOCATIONS**

**MORE THAN GAMES**



© 2026 Ubisoft Entertainment. All Rights Reserved. Ubisoft, Ubi.com and the Ubisoft logo are trademarks of Ubisoft Entertainment in the U.S. and/or other countries.